David M. Arbogast (SBN 167571)
David@SpiroMoss.com
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax: (310) 235-2456

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone: (310) 854-4444; Fax: (310) 854-0812

Jeffrey K. Berns, Esq. (SBN 131351)
jberns@jeffbernslaw.com
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

Attorneys for Plaintiff and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| ENEIDA AMPARAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>PLAZA HOME MORTGAGE, INC. and DOES 1 through 10 inclusive,<br><br>        Defendants. | CASE NO. C07 04498 PVT<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Violations of the Truth in Lending Act, 15 U.S.C.A. §1601, *et seq*;**<br><br>(2) **Violation of Bus. & Prof. Code §17200, *et seq*. - "Unlawful" Business Practices (TILA);**<br><br>(3) **Violation of Bus. & Prof. Code §17200, *et seq*. – "Unfair" and "Fraudulent" Business Practices;**<br><br>(4) **Breach of Contract;**<br><br>(5) **Breach of the Covenant of Good Faith and Fair Dealing; and**<br><br>(6) **Violation of Bus. & Prof. Code §17200, *et seq*. – "Unlawful" Business Practices (Fin. Code § 22302).**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1    Plaintiff, ENEIDA AMPARAN, individually and on behalf of all others similarly situated alleges

2  as follows:

3

4                                              I.

5                                    **INTRODUCTION**

6    1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601. *et*

7  *seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, and other

8  statutory and common law in effect.  Plaintiff ENEIDA AMPARAN, individually, and on behalf of all

9  others similarly situated, brings this action against PLAZA HOME MORTGAGE, INC. and DOES 1-10

10  (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose

11  to Plaintiff and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan

12  documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate

13  on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in

14  negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the

15  initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and

16  Class members would be paying on the Note(s).

17

18                                             II.

19                                    **THE PARTIES**

20    2.    Plaintiff, ENEIDA AMPARAN ("Plaintiff") is, and at all times relevant to this

21  Complaint, was an individual residing in San Jose, California.  On or about January 5, 2006, Plaintiff

22  refinanced her existing home loan and entered into an Option ARM loan agreement with Defendants.

23  The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as Exhibit 1 is a

24  true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

25    3.    Defendant PLAZA HOME MORTGAGE, INC. is a California corporation licensed to do,

26  and is doing business in California.  At all relevant times hereto, PLAZA HOME MORTGAGE, INC.,

27  was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm

28  loans that are the subject of this Complaint.  PLAZA HOME MORTGAGE, INC. transacts business in

CLASS ACTION COMPLAINT

1   Santa Clara County, California and at all relevant times promoted, marketed, distributed, and sold

2   Option Arm loans throughout the United States, including Santa Clara County, California. PLAZA

3   HOME MORTGAGE, INC. has significant contacts with Santa Clara County, California, and the

4   activities complained of herein occurred, in whole or in part, in Santa Clara County, California.

5       4.    At all times mentioned herein, Defendants, and each of them, were engaged in the

6   business of promoting, marketing, distributing, and selling the Option Arm loans that are the subject of

7   this Complaint, throughout the United States, including Santa Clara County, California.

8       5.    Plaintiff is informed and believes, and thereon alleges that each and all of the

9   aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

10  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

11  for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately

12  caused by the conduct of Defendants.

13      6.    Plaintiff is informed and believes, and thereon alleges, that at all times material hereto

14  and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the

15  agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-

16  ego of each of the remaining Defendants and were at all times acting within the purpose and scope of

17  such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

18  partnership or employment and with the authority, consent, approval and ratification of each remaining

19  Defendant.

20      7.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,

21  employee, assignee and/or joint venturer of each of the other Defendants and was acting within the

22  course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the

23  permission and consent of each of the other Defendants.

24      8.    Plaintiff is informed and believes, and thereon alleges, that Defendants, PLAZA HOME

25  MORTGAGE, INC. and DOES 1-10, and each of them, are, and at all material times relevant to this

26  Complaint, performed the acts alleged herein and/or otherwise conducted business in California.

27  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are

28  doing business in this judicial district.

-3-

CLASS ACTION COMPLAINT

9.      Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action. Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiffs herein.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

11.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

## III.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28 U.S.C. § 1331.

13.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants are either individuals who reside in this District within California or are corporations duly licenced to do business in California.

14.     Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendant because it regularly conducts business in this judicial district.

CLASS ACTION COMPLAINT

## IV.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

15.    PLAZA HOME MORTGAGE, INC. ("PLAZA") sells a variety of home loans which include: conventional fixed rate, conventional ARM, 2nd mortgage fixed, home equity lines of credit, FHA, VA, and non-conforming loans.  The ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.

16.    The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and the Class members, in writing, as required by law.

17.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

18.    Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiffs is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiffs were charged a different, much greater interest rate than promised.  Further, Defendants disguised from Plaintiffs the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans.  Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

19.    The Option ARM loan Defendants sold to Plaintiff violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiffs.

/ / /

-5-

CLASS ACTION COMPLAINT

20.     At all times relevant, Defendants marketed their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Defendants used this "teaser" rate to lure Plaintiff into purchasing Defendants' Option ARM loan product. However, the low fixed rate was illusory, a false promise. Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them. Once signed on to Defendants' loan, the interest rate applied to Plaintiff' loans was immediately and significantly increased.

21.     Plaintiff and others similarly situated were consumers who applied for a mortgage loan through Defendants. During the loan application process, in each case, Defendants promoted, advertised, and informed Plaintiff and the Class members that in accepting these loan terms, Plaintiff would be able to lower their mortgage payment and save money. Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

22.     Based on the Defendants' representations, and the conduct alleged herein, Plaintiff and Class members agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiff and Class members were told they were being sold a home loan with a low interest rate of between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years of the loan. Defendants also informed Plaintiff, and Plaintiff was lead to believe, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, the loan was a no negative amortization home loan. Plaintiff's payments were to be applied to their principal loan balances as well as to interest.

23.     After, the purported three (3) - five (5) year fixed interest period, Plaintiff was told their rate "may" change. Plaintiff believed she would then be able to re-finance to another home loan.

24.     Plaintiff believed these facts to be true because that is what the Defendants wanted consumers to believe. Defendants aggressively marketed their product as a fixed, low interest home loan. Defendants knew that if marketed in such a manner, their Option ARM loan product would be a

-6-

1  hugely popular and profitable product for them. Defendants also knew, however, that they were

2  marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed

3  rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

4      25.    In fact, Defendants' Option ARM loan possessed a low, fixed interest *payment* but not a

5  low, fixed interest rate. Unbeknownst to Plaintiff and Class members, the actual interest rate they were

6  charged on their loans was not fixed (and was in fact considerably higher than going market rates.) And,

7  after purchasing Defendants' Option ARM loan product, Plaintiff and Class members did not actually

8  receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for only a

9  single month. Immediately, thereafter, Defendants in every instance and for every loan, increased the

10 interest rate they charged consumers. The charges incurred by Plaintiff and Class members over and

11 above the fixed interest payment rate were added to the principal balance on their home loans in ever

12 increasing increments, substantially reducing the equity in these borrowers' homes.

13     26.    Defendants, through the loan documents they created and supplied to Plaintiff, stated that

14 negative amortization was only a possibility and would occur only if the payments were not sufficient.

15 Defendants concealed the fact that the loan as presented and designed, in fact, *guaranteed* negative

16 amortization. Defendants failed to disclose and omitted the objectively material fact that negative

17 amortization would occur if the consumer followed the payment schedule set forth by Defendants in the

18 loan documents. This information was objectively material and necessary to make the statements made

19 by Defendants, in light of the circumstances, not only misleading because that information would

20 indicate that equity would be consumed if the payment schedule was followed, thereby making it

21 difficult if not impossible to refinance the loan at or around the time the prepayment penalty expired and

22 the interest and payment rates re-set. In this respect, Defendants utterly failed to place any warning on

23 the Truth and Lending Disclosure Form about negative amortization.

24     27.    At all times relevant, once Plaintiff and the Class members accepted Defendants' Option

25 ARM loan, they had no viable option by which to extricate themselves because these Option ARM loan

26 agreements included a draconian three year pre-payment penalty.

27 ///

28 ///

CLASS ACTION COMPLAINT

28. The Option ARM loans sold by Defendants all have the following uniform characteristics:

    (a) There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiff into entering into the loan. The rate offered was typically 1%-3%;

    (b) The loan has with it a corresponding low payment schedule. The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

    (c) The initial payments in the required disclosures were equal to the low interest rate being offered. The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule. This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

    (d) The payment has a capped 2-3 % annual increase on the payment amount;

    (e) This loan includes a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

29. Defendants uniformly failed to inform consumers, including Plaintiff and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the true interest charged on the loans was significantly higher than the promised, advertised rate.

30. Defendants uniformly failed to inform consumers, including Plaintiff and the Class members, that the payments set forth in Defendants' schedule of payments were insufficient to cover the actual charges and that this was, in fact, a negative amortization loan.

31. Defendants uniformly failed to inform consumers, including Plaintiff and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

/ / /

/ / /

-8-

CLASS ACTION COMPLAINT

# V.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case law thereunder. The classes Plaintiff seek to represent are defined as follows:

> **The California Class**: All individuals who, within the four year period preceding the filing of Plaintiff Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California. Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

> An appropriate sub-Class exists for the following Class Members:

> All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiff reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

33.    Numerosity: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiff are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

34.    Commonality: Common questions of law or fact are shared by the Class members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

-9-

1   (1)   Whether Defendants' acts and practices violate the Truth in Lending Act;

2   (2)   Whether Defendants' conduct violated 12 C.F.R. § 226.17;

3   (3)   Whether Defendants' conduct violated 12 C.F.R. § 226.19;

4   (4)   Whether Defendants engaged in unfair business practices aimed at deceiving

5         Plaintiff and the Class members before and during the loan application process;

6   (5)   Whether Defendants, by and through their officers, employees, and agents failed

7         to disclose that the interest rate actually charged on these loans was higher than

8         the rate represented and promised to Plaintiff and the Class members;

9   (6)   Whether Defendants, by and through their officers, employees and agents

10        concealed information they were mandated to disclose under TILA;

11  (7)   Whether Defendants failed to disclose the true variable nature of interest rates on

12        adjustable rate mortgage loans and adjustable rate home equity loans;

13  (8)   Whether Defendants failed to properly disclose the process by which negative

14        amortization occurs, ultimately resulting in the recasting of the payment structure

15        over the remaining lifetime of the loans;

16  (9)   Whether Defendants' failure to apply Plaintiff and the Class members' payments

17        to principal as promised in the form Notes constitutes a breach of contract,

18        including a breach of the covenant of good faith and fair dealing;

19  (10)  Whether Defendants' conduct in immediately raising the interest rate on

20        consumers' loans so that no payments were made to the principal balance

21        constitutes breach of the covenant of good faith and fair dealing;

22  (11)  Whether Defendants' marketing plan and scheme misleadingly portrayed or

23        implied that these loans were fixed rate loans, when Defendants knew that only

24        the periodic payments were fixed (for a time) but that interest rates were not, in

25        fact, "fixed;"

26  (12)  Whether the terms and conditions of Defendants' Option ARM home loan are

27        unconscionable;

28  (13)  Whether all Class members are entitled to punitive damages;

-10-

1          (14)    Whether all Class members are entitled to actual damages; and

2          (15)    Whether all Class members are entitled to rescission.

3      35.    Typicality: Plaintiff claims are typical of the claims of the Class members. Plaintiff and

4  the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiff

5  and the other Class members are based on the same legal theories.

6      36.    Adequacy: Plaintiff is an adequate representative of the Class because her interests do

7  not conflict with the interests of the other members of the Class Plaintiff seeks to represent. Plaintiff has

8  retained counsel competent and experienced in complex class action litigation and Plaintiff intends on

9  prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately

10  protected by Plaintiff and her counsel.

11      37.    Ascertainable Class: The proposed Classes are ascertainable in that the members can be

12  identified and located using information contained in Defendants' mortgage lending records.

13      38.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

14  23(b)(2), and 23(b)(3):

15          (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as alleged

16                  herein, constitute a course of conduct common to Plaintiff and each Class member.

17                  Prosecution of separate actions by individual Class members would create a risk of

18                  inconsistent or varying adjudications which would establish incompatible standards of

19                  conduct for Defendants and/or substantially impair or impede the ability of individual

20                  Class members to protect their interests;

21          (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendants, and each of

22                  them, have acted or refused to act on grounds generally applicable to the Class, thereby

23                  making final injunctive relief or corresponding declaratory relief with respect to the Class

24                  as a whole appropriate; and

25          (c)    Predominant Questions of Law or Fact: Questions of law or fact common to the Class

26                  members, including those identified above, predominate over questions affecting only

27                  individual Class members (if any), and a class action is superior to other available

28                  methods for the fair and efficient adjudication of the controversy. Class action treatment

-11-

will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI.

## FIRST CAUSE OF ACTION

### (Violations of Truth in Lending Laws, 15 U.S.C.A. §1601, *et seq.*,

### (Against All Defendants)

39.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

40.  15 U.S.C.A. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

41.  The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

> **§226.1 Authority, purpose, coverage, organization, enforcement and liability. . .**
>
> (b)    Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

42.  Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

> **§ 226.17. General disclosure requirements.**

CLASS ACTION COMPLAINT

(a) Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

43.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

44.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly or accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do under TILA. These violations are apparent on the face of the TILA Disclosure Forms.

45.    As such, Plaintiff seek redress under the Truth in Lending Act. This action seeks to obtain rescission for each Class member, injunctive relief, redress, restitution, disgorgement, money damages, attorneys' fees and other equitable relief against Defendants for engaging in unfair or deceptive acts or practices in violation of TILA.

46.    The TILA violations committed by Defendants are more specifically detailed as follows:

A.    **Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

47.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner. Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all. Defendants failed to meet the disclosure mandates required of them concerning the interest rate Defendants actually applied to Plaintiff and Class members' loans, as well as the interest actually charged to Plaintiff and the Class members.

/ / /

-13-

CLASS ACTION COMPLAINT

48.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous. At worst, it is intentionally deceptive. In either instance, it is certainly different than the interest rate set forth by Defendants in the TILA Disclosure Form. The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

49.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to the loan for a single month. However, Defendants do not make clear in the Note or anywhere else that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiff) is only offered for the first thirty (30) days of the loan. Defendants employ a most convoluted, confusing and circuitous methodology in describing the interest rate. Somewhere in the Note, Defendants state that the promised low interest rate is the rate until the "change date." A description of the change date is found somewhere else in the Note. The descriptive method employed by Defendants in this regard makes it extremely difficult for anyone to arrive at the conclusion that the change date corresponds to the very first monthly payment Plaintiff and the Class members made on their loans.

50.    The language used by Defendants to disclose the interest rate on Plaintiff and the Class members loans was anything but clear and conspicuous. Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiff and the Class members. In particular, it is virtually impossible to discern when Plaintiff and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all. And, the truth is that Plaintiff and the Class members *never* received the low interest rate, or in some cases received it for only thirty days. Defendants promise of a low interest rate is and was wholly illusory and deception practiced on Plaintiff and Class members by Defendants to facilitate sales of their loans to consumers.

51.    The Note also sets forth the amount of Plaintiff and Class members' initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by Defendants was true and was being applied to the principal balance on the loans. This a further deception committed by Defendants, because the real interest rate charged on the loan by Defendants turns out to be much higher than the low interest rate promised to Plaintiff and Class

-14-

members. The payment amount is included to deceive consumers into falsely believing they are. in fact, receiving the teaser rate promised to them.

52.     The TILA Disclosure Form is also confusing and deceptive for much the same reason. It shows the scheduled payments for the first three to five years of the loan as being based on the low "teaser" rate Plaintiff and Class members were promised. In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiff on their loans.

53.     Lastly, as concerning Defendants' failure to accurately, clearly or conspicuously disclose the actual interest rate applied to Plaintiff and Class members' loan, the Note expressly states and/or implies that Plaintiff and the Class members payments will pay off principal and interest on the loan. That is, based on the payment schedule and initial monthly payment amount presented to Plaintiff by Defendants, and set forth in the Note and TILA Disclosure Form, Plaintiff and the Class members will be paying off principal and interest on their loans by submitting payments in accordance with the payment schedule. The contractual language in the Note only makes sense, and can only be true, if the interest rate actually applied to Plaintiff loans by Defendants were, in fact, the "teaser" rate promised by Defendants. Thus, Plaintiff and the Class members believed that the low rate promised to them would be applied to their loans. However, the true fact is that the payment established by Defendants did not pay any principal on the loan at all. The payment established by Defendants only covered a portion of the interest actually charged Plaintiff and the Class members by Defendants each month on these loans.

54.     Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiff and the Class members, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

**B.      Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

55.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

**§ 226.19.  Certain residential mortgage and variable-rate transactions.**

. . .

-15-

(b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .

(vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

56.    These required disclosures must be made in the TILA Disclosure Form with the other disclosures.  The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and whether unpaid interest *is* being added to principal.

57.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps, that the disclosure required a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the **principal balance will increase**)..." (Found at C.F.R. § 226.19)

58.    At all times relevant, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as

-16-

1  Regulation Z and TILA.

2      59.    Defendants sold Plaintiff and the Class members an Option ARM loan which has a

3  variable rate feature with payment caps. Defendants failed to include any reference on the TILA

4  Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone

5  that the loan schedule had negative amortization. The payment schedule makes no reference to negative

6  amortization and makes it appear that the payments cover both principal and interest.

7      60.    In fact, the only place where Defendants even inferentially reference negative

8  amortization is in the Note. However, they mention it in such a way as to make a reasonable person

9  believe that negative amortization is only a possibility, rather than a certainty. And, these loans are, in

10  fact, designed in such a manner so as to make negative amortization a certainty.

11     61.    This attempt at a disclosure did not actually serve to alert or inform the borrowers of

12  anything, much less clearly and conspicuously disclose that the the payment schedule provided by

13  Defendants absolutely would not pay both principal and interest, and therefore would guarantee that

14  negative amortization was to occur on these loans. Rather, Defendants made it appear that as long as the

15  payment schedule provided by Defendants was followed, there would be no negative amortization.

16     62.    So, even where any language is found describing negative amortization, the language is

17  misleading and deceptive. In fact, Defendants' Option ARM loan was designed in such a way as to

18  guarantee negative amortization. TILA demands more than a statement that the payment could be less

19  when Defendants were well aware that the payment is less, and would always be less, than the full

20  interest and principal.

21

22     **C.    Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

23          **Rate is Discounted Violates Truth in Lending Laws**

24     63.    As previously stated, the informed use of credit means being able to make decisions, as

25  well as being able to plan an individual's finances. Every month consumers look at their income and

26  budget where their funds must be paid. The biggest investment in one's life is generally that person's

27  home. In fact, it is often referred to as "the American Dream" to own a home.

28  / / /

CLASS ACTION COMPLAINT

64.    Variable rate loans are based on a "margin" and an "index." The index is often the Prime Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, basically it is the lender's profit on the loan.

65.    TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are. In particular, when the payment is not based on that index and margin a separate disclosure is required. Further, the disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization. The disclosure must also inform that interest rate and payment may go up and clearly and conspicuously provide the circumstances under which the rate and payment will increase.

66.    The Federal Reserve Board established disclosure requirements for variable rate loans. 26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments to borrowers. If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

67.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because Plaintiff and other consumers similarly situated need this information in order to budget their money. They need to know if their house payments are going to go up so that they can plan for it. If the change comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their homes.

68.    Defendants, and each of them, state only that the interest rate *may* increase in the future. However, an interest rate increase was in fact far more certain than this disclosure lead Plaintiff and Class members to believe. If Defendants had given the Plaintiff and the Class members the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it was an absolute certainty and Defendants failed and omitted this material information in their disclosures to Plaintiff and the Class members.

69.    Defendants disclosure statement provided that, "the interest rate may increase during the term of this transaction if the index increases." This, however, was not the only circumstance that could cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial

CLASS ACTION COMPLAINT

1   interest rate is discounted, creating the possibility of an increase even when the index did not rise.  Due

2   to the initial discounted interest rate, the annual interest rate would increase if the index remained

3   constant, or even if the index declined.  Because Defendants' disclosure failed to provide this extremely

4   important, material information, Defendants disclosure failed to meet the clear and conspicuous standard

5   mandated under TILA.

6       70.     Defendants failed to disclose to Plaintiff and the Class members that their rate was, with

7   100% certainty, going to increase, whether or not the index upon which their loans are based changed or

8   not.  As such, Defendants violated TILA and Regulation Z with unclear, deceptive and poorly drafted or

9   intentionally misleading disclosure.

11  **D.    Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in**

12  **Lending Laws**

13      71.     Defendants provided Plaintiff and Class members with multiple, conflicting interest rates

14  when describing the costs of this loan.  On the TILA Disclosure Form Defendants set forth one interest

15  rate, while on the Note, Defendants set forth two other, different interest rates.

16      72.     The official staff commentary to 226 C.F.R. § 17(C)(8) states:

17          *Basis of disclosures in variable-rate transactions.* The disclosures for a

18          variable-rate transaction must be given for the full term of the transaction

19          and must be based on the terms in effect at the time of consummation.

20          Creditors should base the disclosures only on the initial rate and should

21          not assume that this rate will increase. For example, in a loan with an

22          initial rate of 10 percent and a 5 percentage points rate cap, creditors

23          should base the disclosures on the initial rate and should not assume that

24          this rate will increase 5 percentage points. **However, in a variable-rate**

25          **transaction with a** seller buydown that is reflected in the credit contract, a

26          consumer buydown, or **a discounted or premium rate, disclosures**

27          **should not be based solely on the initial terms. In those transactions,**

28          **the disclosed annual percentage rate should be a composite rate based**

-19-

**on the rate in effect during the initial period and the rate that is the**

**basis of the variable-rate feature for the remainder of the term. (See**

the commentary to section 226.17(c) for a discussion of buydown,

discounted, and premium transactions and the commentary to section

226.19(a)(2) for a discussion of the redisclosure in certain residential

mortgage transactions with a variable-rate feature.)

73.    The reason for this requirement is clear. Consumers cannot make informed decisions when they cannot compare the cost of credit to other proposals. It is therefore incumbent upon Defendants to show the composite interest rate in effect so that the borrowers can understand exactly what they are paying for the loan.

74.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite rate in variable rate loans that had a discounted initial rate. The loan sold to Plaintiff and Class members by Defendants is a discounted variable-rate loan. Because Defendants failed to properly, clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants violated TILA and Regulation Z.

75.    As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff and Class members have suffered injury an amount to be determined at time of trial. If Defendants had not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM loan product, as alleged herein, Plaintiff and Class members would not have entered into the home loan agreements which are the subject of this action. Because Defendants failed to make proper disclosures in violation of TILA, Plaintiff and Class members now seek redress in an amount and/or type as proven at time of trial.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

VII.

## SECOND CAUSE OF ACTION

Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -

"Unlawful" Business Acts or Practices Predicated on Violations of TILA

(Against All Defendants)

76.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

77.    California's Unfair Competition Law ("UCL"), Business and Professions Code, § 17200, *et seq.*, prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

78.    A business act or practice is "unlawful" if it violates any other law, code or statute.

79.    Defendants, and each of them, engaged in unfair competition within the meaning of § 17200 by violating the TILA as detailed in Plaintiff' First Cause of Action. Defendants failed to comply with the disclosure requirements mandated by TILA, Regulation Z and Official Staff Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly or accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do under TILA.

80.    Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

VIII.

## THIRD CAUSE OF ACTION

(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*,

"Unfair" and "Fraudulent" Business Acts or Practices,

(Against All Defendants)

81.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

82.    The instant claim is predicated on the generally applicable duty of any contracting party

-21-

CLASS ACTION COMPLAINT

1  to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business
2  practices. The Plaintiff and the Class members hereby seek to enforce a general proscription of unfair
3  business practices and the requirement to refrain from deceptive conduct. The instant claim is
4  predicated on duties that govern anyone engaged in any business and anyone contracting with anyone
5  else.

6      83.    California Business and Professions Code, §17200, *et seq.*, also known as the California
7  Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair,
8  fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading
9  advertising."

10     84.    A business practice is "unfair" if is violates established public policy or if it is immoral,
11  unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

12     85.    A business practice is "fraudulent" if it is one which is likely to deceive the public.

13     86.    Defendants engaged in a pattern of deceptive conduct and concealment aimed at
14  maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each
15  of them, marketed and sold Plaintiff and the Class members a deceptively devised financial product.
16  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiff, in a
17  false or deceptive manner. Defendants marketed and advertised to the general public through brochures,
18  flyers and other substantially identical marketing material, a loan which appeared to have a very low,
19  fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further,
20  Defendants disguised from Plaintiff and the Class members the fact that Defendants' Option ARM loan
21  was designed to, and did, cause negative amortization to occur.

22     87.    Defendants lured Plaintiff and the Class members into the Option ARM loan with
23  promises of low fixed interest. Once Plaintiff and the Class members entered into these loans,
24  Defendants switched the interest rate charged on the loans to a much higher rate than the one they
25  advertised and promised to Plaintiff and the Class members. After entering these loans, Plaintiff and the
26  Class members could not escape because Defendants purposefully placed into these loans an extremely
27  onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves
28  from these loans. Thus, once on the hook, Plaintiff and the Class members could not escape from

CLASS ACTION COMPLAINT

1    Defendants loans.

2         88.    Plaintiff and Class members were consumers who applied for a mortgage loan through

3    Defendants. During the loan application process, in each case, Defendants uniformly promoted,

4    advertised, and informed Plaintiff and Class members that in accepting these loan terms, Plaintiff and

5    Class members would be able to lower their mortgage payment and save money.

6         89.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,

7    typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate,

8    the purpose of which was to get consumers to enter into loan agreements with Defendants. Defendants

9    did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate that

10   Defendants would actually charge Plaintiff and the Class members on their outstanding loan balances.

11        90.    Based on the Defendants' representations and conduct, Plaintiff and the Class members

12   agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiff and the Class

13   members were told they were being sold a home loan with a low interest rate, fixed for the first three (3)

14   to five (5) years of the loan. Plaintiff and the Class members were also lead to believe that if they made

15   payments based on this advertised interest rate, and the payment schedule provided to them by

16   Defendants, the loan was a no negative amortization home loan. After, the fixed interest period, Plaintiff

17   and the Class members were told their rate "may" change. And, Plaintiff believed they would then be

18   able to re-finance to another home loan. Plaintiff and the Class members believed these facts to be true

19   because that is what the Defendants wanted consumers to believe, that is what Defendants lead

20   consumers to believe.

21        91.    Defendants aggressively sold their product as a fixed low interest home loan. Defendants

22   knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and

23   profitable product for them. Defendants also knew, however, that they were marketing their product in a

24   false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public,

25   Defendants knew, however, that this was not entirely true.

26        92.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,

27   fixed interest rate. Unbeknownst to Plaintiff and Class members, the actual interest rate they were

28   charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product, Plaintiff

-23-

CLASS ACTION COMPLAINT

1   and class members never actually received the benefit of the low advertised interest rate, or, in some

2   cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendants in

3   every instance and for every loan increased the interest rate they charged Plaintiff and the Class

4   members.  Once Plaintiff and Class members accepted Defendants' Option ARM loan, they had no

5   viable option to extricate themselves because of these loan agreements included a draconian pre-

6   payment penalty.

7       93.     Defendants perpetrated a bait and switch scheme on Plaintiff and Class members.

8   Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe

9   the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in

10  order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

11      94.     Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, as

12  herein alleged, and each has suffered injury in fact, and have lost money or property as a result of

13  Defendants' unfair competition.

14

15                                      **IX.**

16                          **FOURTH CAUSE OF ACTION**

17                               **Breach of Contract**

18                             **(Against All Defendants)**

19      95.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

20      96.     Plaintiff and Class members entered into a written home loan agreement – the Note –

21  with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiff or Class

22  members.  The Note describes terms and respective obligations applicable to the parties herein.

23      97.     The Note describes Plaintiff and Class members' interest rate on the loan as a low

24  interest rate, typically between 1% and 3%.  In addition, as required by federal law, the Defendants

25  provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment

26  schedule based on that low 1% to 3% interest rate.  For the first three (3) to five (5) years the payment

27  schedule shows that Plaintiff and Class members' monthly payment obligations to Defendants are the

28  exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the

-24-

CLASS ACTION COMPLAINT

1  interest rate actually charged by Defendants on the loans was the low interest rate promised.

2       98.    Defendants expressly and/or through their conduct and actions indicate that Plaintiff and

3  Class members' monthly payment obligations *will* be applied to payment of both principal and interest

4  owed on the loans. Defendants breached this agreement and never applied any of Plaintiff and Class

5  members' payments to principal.

6       99.    The written payment schedules prepared by Defendants, and applicable to Plaintiff and

7  Class members' loans, show that the payment amounts owed by Plaintiff and Class members to

8  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest

9  actually charged on the loan was the low interest rate promised. If the Defendants did as promised, the

10  payments would have been sufficient to pay both principal and interest amounts.

11       100.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rates and

12  applied *no part* of Plaintiff and Class members' payments to the principal balances on their loans. In

13  fact, because Defendants charged more interest than was agreed to, the total payment was insufficient to

14  cover the interest charge and the principal balance increased (which is the negative amortization built

15  into the loan).

16       101.    Defendants breached the written contractual agreement by failing to apply any portion of

17  Plaintiff and the Class members' monthly payments towards their principal loan balances.

18       102.    Plaintiff and the Class members, on the other hand, did all of those things the contract

19  required of them. Plaintiff and the Class members made monthly payments in the amount required by

20  the terms of the Note and reflected in the payment schedule prepared by Defendants.

21       103.    As a result of Defendants' breach of the agreement, Plaintiff and the Class members have

22  suffered harm. Plaintiff and Class members have incurred additional charges to their principal loan

23  balance. Plaintiff and Class members have incurred and will continue to incur additional interest

24  charges on the principal loan balance and surplus interest added to Plaintiff and Class members'

25  principal loan balance. Furthermore, Defendants' breach has placed Plaintiff and Class members in

26  danger of losing their homes through foreclosure, as Defendants have caused Plaintiff and Class

27  members' principal loan balances to increase and limited these consumers' ability to make their future

28  house payments or obtain alternative home loan financing.

-25-

# X.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

104.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

105.    Defendants entered into written agreements with Plaintiff and Class members based on representations Defendants made indirectly and directly to Plaintiff and the Class members about the terms of their loans.

106.    Defendants impliedly and expressly represented to Plaintiff and Class members that it would provide loans secured by Plaintiff and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

107.    Defendants also represented that if Plaintiff and Class members made the monthly payments in the amount prescribed by Defendants no negative amortization would occur. The Note expressly states and/or implies that Plaintiff and Class members' monthly payment obligation will be applied to pay both principal and interest owed on the loan. The Note further makes clear that for each monthly payment Plaintiff and Class members make, "interest shall be paid before principal."

108.    The written payment schedules prepared by Defendants, and applicable to Plaintiff and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

109.    Instead, Defendants immediately raised Plaintiff and Class members' interest rate and applied *no part* of Plaintiff and Class members' payment to principal. In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiff and the Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiff and the Class members owed on their homes.

110.    Defendants unfairly interfered with Plaintiff and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiff and Class members thousands of dollars more

-26-

than represented by Defendants. Plaintiff and Class members did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiff and Class members to lose equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of one of their most important investments.

111.    Plaintiff and Class members, on the other hand, did all of those things the contract required of them. Plaintiff and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

112.    As a result of Defendants' breach of the agreement, Plaintiff and Class members have suffered harm. Plaintiff and Class members have incurred additional charges to their principal loan balance. Plaintiff and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff and Class members' principal loan balance. Furthermore, Defendants' breach has placed Plaintiff and Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiff and Class members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

## XI.

## SIXTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*, –**

**"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

**(Against All Defendants)**

113.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

114.    California Business and Professions Code, §17200, *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

115.    A business act or practice is "unlawful" if it violates any other law, code or statute.

116.    Defendants, and each of them, engaged in unfair competition within the meaning of

-27-

1  §17200 by violating California Financial Code § 22302.

2      117.    California Financial Code § 22302 applies to consumer loan contracts. It states that a

3  loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be

4  deemed to be a violation of Financial Code § 22302.

5      118.    The loan contracts prepared by Defendants and entered into between Plaintiff and Class

6  members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

7      119.    The relative bargaining power between Plaintiff and Class members and Defendants was

8  unequal. Plaintiff and Class members could not negotiate or change any of the particular terms related to

9  the loan and drafted by Defendants. To secure the loan Plaintiff and Class members were given no

10  choice but to make payments as described in the payment schedule and to accept and sign all the

11  associating documents numbering over a hundred pages.

12      120.    The period of time where Defendants offered Plaintiff and Class members a low interest

13  rate, often was for only one month. Because Defendant Lender packaged the documents in such a

14  manner as to lead Plaintiff and Class members to believe that they had a low interest rate and therefore

15  low payments for three to five years, Plaintiff and Class members would end up owing significantly

16  more than before they started and with a significant chance of losing their homes through foreclosure.

17      121.    Defendants drafted these loan documents for use on tens of thousands of individuals. The

18  loan process was such that individual terms could not be modified. The documents evidencing the loan

19  were delivered to Plaintiff and Class members at the time of signature. The loan process offered by

20  Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents

21  at the time of execution.

22      122.    Defendants further inserted into the loan documents a prepayment penalty that has as it

23  sole purpose to cause Plaintiff and Class members to continue under the terms of this loans or lose

24  thousands of dollars if Plaintiff try to refinance the loans.

25      123.    The loans as drafted by Defendants were so "one-sided" that they could only lead Plaintiff

26  and Class members to one result, which was a significant loss of money. As a result of Defendants'

27  unconscionable behavior, Plaintiff and the Class members have suffered direct and actual injury.

28  / / /

CLASS ACTION COMPLAINT

1    124.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section

2    1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and

3    constitutes a violation of the UCL.

4    125.    Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, as

5    herein alleged, and each has suffered injury in fact, and have lost money or property as a result of

6    Defendants' unfair competition.

7

8    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant,

10    jointly and severally, as follows:

11    A.    An order certifying this case as a class action and appointing Plaintiff and their counsel to

12    represent the Class;

13    B.    For actual damages according to proof;

14    C.    For compensatory damages as permitted by law;

15    D.    For consequential damages as permitted by law;

16    E.    For statutory damages as permitted by law;

17    F.    For punitive damages as permitted by law;

18    G.    For rescission;

19    H.    For equitable relief, including restitution;

20    I.    For an order requiring Defendants to disgorge all profits obtained as a result of their

21    unfair competition;

22    J.    For interest as permitted by law;

23    K.    For Declaratory Relief;

24    L.    For a mandatory injunction requiring Defendants to permanently include in every Option

25    ARM loan and disclosure statement: (i) comply with 12 C.F.R. § 226.17 by clearly and

26    conspicuously disclosing the actual interest rate on the Note(s) and disclosure

27    statement(s); (ii) comply with 12 C.F.R. § 226.19 by clearly and conspicuously disclosing

28    in the Note(s) and the disclosure statement(s) that payments on the variable interest rate

CLASS ACTION COMPLAINT

1    loan during the initial period at the teaser rate will result in negative amortization and that

2    the principal balance will increase; and (iii) clearly and conspicuously disclose that the

3    initial interest rate provided is discounted and does not reflect the actual interest that

4    Plaintiff and Class members would be paying on the Note(s).

5    M.    For reasonable attorneys' fees and costs; and

6    N.    For such other relief as is just and proper.

7

8    DATED: August 27 2007                          **SPIRO MOSS BARNESS LLP**

9

10                                                  By:

11                                                  David M. Arbogast, Esq.
                                                    11377 W. Olympic Boulevard, Fifth Floor
                                                    Los Angeles, CA 90064-1683
12                                                  Phone: (310) 235-2468; Fax: (310) 235-2456

13                                                  Paul R. Kiesel, Esq.
                                                    Patrick Deblase, Esq.
14                                                  Michael C. Eyerly, Esq.
                                                    **KIESEL BOUCHER LARSON LLP**
15                                                  8648 Wilshire Boulevard
                                                    Beverly Hills, California 90210
16                                                  Phone: (310) 854-4444; Fax: (310) 854-0812

17                                                  Jeffrey K. Berns, Esq.
                                                    **LAW OFFICES OF JEFFREY K. BERNS**
18                                                  19510 Ventura Blvd, Suite 200
                                                    Tarzana, California 91356
19                                                  Phone: (818) 961-2000; Fax: (818) 867-4820

20                                                  Attorneys for Plaintiff and all others Similarly
                                                    Situated
21   ///

22   ///

23   ///

24

25

26

27

28

-30-

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2     Plaintiff hereby demand a trial by jury to the full extent permitted by law.

3

4    DATED: August ___, 2007                **SPIRO MOSS BARNESS LLP**

5

6                                           By:
                                                 David M. Arbogast, Esq.
7                                                11377 W. Olympic Boulevard, Fifth Floor
                                                 Los Angeles, CA 90064-1683
8                                                Phone: (310) 235-2468; Fax: (310) 235-2456

9                                                Paul R. Kiesel, Esq.
                                                 Patrick Deblase, Esq.
10                                               Michael C. Everly, Esq.
                                                 **KIESEL BOUCHER LARSON LLP**
11                                               8648 Wilshire Boulevard
                                                 Beverly Hills, California 90210
12                                               Phone: (310) 854-4444; Fax: (310) 854-0812

13                                               Jeffrey K. Berns, Esq.
                                                 **LAW OFFICES OF JEFFREY K. BERNS**
14                                               19510 Ventura Blvd, Suite 200
                                                 Tarzana, California 91356
15                                               Phone: (818) 961-2000; Fax: (818) 867-4820

16                                               Attorneys for Plaintiff and all others Similarly
                                                 Situated
17

18

19

20

21

22

23

24

25

26

27

28

-31-

CLASS ACTION COMPLAINT

Exhibit No. 1

E "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: 07512004

MIN: 100109800000248598
MERS Phone: 1-888-679-8377

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

JANUARY 05, 2006
[Date]

CAMPBELL
[City]

CALIFORNIA
[State]

2667 BRAHMS AVE, SAN JOSE, CA 95122-
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    472,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed    ONE HUNDRED FIFTEEN AND 000/1000THS    percent (115.000 %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
PLAZA HOME MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    1.500    %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the    1st    day of    MARCH, 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding    THREE AND 400/1000THS    percentage point(s) (    3.400    %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950    %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3.    PAYMENTS

(A) Time and Place of Payments
I will make a payment every month.
I will make my monthly payments on the          day of each month beginning on          MARCH, 2006          .
I will make these payments every month until I have paid all the Principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on          FEBRUARY 01, 2036          , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   PLAZA HOME MORTGAGE, INC.
5090 SHOREHAM PLACE #109, SAN DIEGO, CA  92122
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $          1,628.97
unless adjusted under Section 3 (F).

(C) Payment Change Dates
My monthly payment may change as required by Section 3(D) below beginning on the first day of          MARCH, 2007          ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment
also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum
Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment
Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of
the interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me
to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also
have the option to pay the Full Payment for my monthly payment.

(E) Additions to My Unpaid Principal
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of
the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment
My unpaid Principal can never exceed the Maximum Limit equal to   ONE HUNDRED FIFTEEN AND 000/1000THS    percent
(115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.   NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of      FIFTEEN     ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000      % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that, if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.    GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

10.   WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   SECURED NOTE
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)                                          Page 4 of 5                                                10/04

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

ENEDA AMPARAN _____ (Seal)   _____ (Seal)
                                        -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                        -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                        -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                        -Borrower                                  -Borrower

FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:
PLAZA HOME MORTGAGE, INC.

Borrower:
ENEIDA AMPARAN

875 NORTH FIRST ST. #900
SAN JOSE, CA 95112

1857 IBRAHMS AVENUE
SAN JOSE, CA 95123-
Loan Number: 07512004

Date:    JANUARY 05, 2008
Check box if applicable:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | [ ] Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit including your down-payment of $ N/A |
| 7.136 % | $ 778,980.00 | $ 462,476.28 | $ 1,241,455.28 | $ N/A |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 12 | 1,636.97 | 03/01/2006 | | | | | | |
| 12 | 1,751.14 | 03/01/2007 | | | | | | |
| 12 | 1,883.48 | 03/01/2008 | | | | | | |
| 12 | 2,023.66 | 03/01/2009 | THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE WERE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX, RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM. | | | | | |
| 12 | 2,175.44 | 03/01/2010 | | | | | | |
| 300 | 2,729.72 | 03/01/2011 | | | | | | |

[ ] DEMAND FEATURE: This obligation has a demand feature.
[X] VARIABLE RATE: Your loan contains variable rate features.
  [ ]  Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
  [X]  Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or
       decrease during the term of this transaction with increases or decreases in the value of this "index" (or "Reference Rate"). The
       rate that you will pay may not be changed more often than every  ONE  MONTH  commencing  03/01/2006 .
    [ ]  Rate Change Limits:  The rate may not be changed by more than _____ % on any one Rate Change Date.
    [X]  The rate will never be greater than ___9.950___ %.
    [ ]  Any increase in the rate will result in a corresponding increase in the payment.
    [X]  Rate increases may occur without immediate and/or corresponding payment increases.
    [X]  Unpaid interest will be added to the principal.
       The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT
MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

INSURANCE: The following insurance is required to obtain credit:
[ ]  Credit life insurance and credit disability        [X]  Property insurance        [ ]  Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ]  If you purchase [ ]  property [ ]  flood insurance from creditor you will pay $ _____ for one year term.
SECURITY:  You are giving a security interest in:
  2637 IBRAHMS AVE, SAN JOSE, CA 95123-
[ ]  The goods or property being purchased        [X]  Real property you already own.
FILING FEES: $  35.00
LATE CHARGE:  If a payment is more than  15  days late, you will be charged  6.00  % of the Principal & interest payment.
PREPAYMENT: If you pay off early, you
[X]  may        [ ]  will not    have to pay a penalty.
[ ]  may        [X]  will not    be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
[ ]  may        [ ]  may, subject to conditions        [X]  may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled
date and prepayment refunds and penalties.
[ ]  e means an estimate        [ ]  all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery
or signing of this disclosure.
[X]  I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

_____        _____
ENEIDA AMPARAN              Date                          Date

_____        _____
              Date                          Date

LENDER SUPPORT SYSTEMS, INC. GEN-601.CA (0708)