1  David M. Arbogast (SBN 167571)
   darbogast@law111.com
2  Jeffrey K. Berns, Esq. (SBN 131351)
   jberns@law111.com
3  **ARBOGAST & BERNS LLP**
   19510 Ventura Boulevard, Suite 200
4  Tarzana, California 91356
   Phone: (818) 961-2000; Fax: (818) 867-4820
5
   Paul R. Kiesel, Esq. (SBN 119854)
6  kiesel@kbla.com
   Patrick DeBlase, Esq. (SBN 167138)
7  deblase@kbla.com
   Michael C. Eyerly, Esq. (SBN 178693)
8  eyerly@kbla.com
   **KIESEL BOUCHER LARSON LLP**
9  8648 Wilshire Boulevard
   Beverly Hills, California 90211
10 Phone:  (310) 854-4444; Fax:  (310) 854-0812

11 [*Additional counsel listed on signature page*]
   Attorneys for Plaintiff and all others Similarly Situated

12

13                    **UNITED STATES DISTRICT COURT**

14        **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

15 ENEIDA AMPARAN, individually and on      ) **CASE NO. C-07-04498 - JF (PVTx)**
   behalf of all others similarly situated,  )
16                                            ) **SECOND AMENDED CLASS ACTION**
                                              ) **COMPLAINT FOR:**
17                Plaintiff,                   )
                                              )
18           v.                               ) **(1)  Violations of the Truth in Lending Act, 15**
                                              )      **U.S.C. §1601, *et seq*;**
19                                            )
                                              ) **(2)  Violation of Bus. & Prof. Code §17200, *et***
20 PLAZA HOME MORTGAGE, INC.,                 )      ***seq*. - "Unlawful" Business Practices**
   WASHINGTON MUTUAL MORTGAGE                 )      **(TILA);**
21 SECURITIES CORP. and DOES 1 through 10     )
   inclusive,                                 ) **(3)  Fraudulent Omissions;**
22                                            )
                Defendants.                   ) **(4)  Violation of Bus. & Prof. Code §17200, *et***
23                                            )      ***seq*. – "Unfair" and "Fraudulent" Business**
                                              )      **Practices;**
24                                            )
                                              ) **(5)  Breach of Contract; and**
25                                            )
                                              ) **(6)  Tortuous Breach of the Covenant of Good**
26 _____        )      **Faith and Fair Dealing.**
                                              )
27                                                        **JURY TRIAL DEMANDED**

28

_____
SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1  Plaintiff, ENEIDA AMPARAN, individually and on behalf of all others similarly situated

2  alleges as follows:

3  ## I.

4  ## INTRODUCTION

5  1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§1601, *et*

6  *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* and other

7  statutory and common law in effect.  Plaintiff ENEIDA AMPARAN, individually, and on behalf of all

8  others similarly situated, brings this action against PLAZA HOME MORTGAGE, INC., Washington

9  Mutual Mortgage Securities Corp., and DOES 1-10 (collectively "Defendants"), based, in part, on

10  Defendants' failure to clearly and conspicuously disclose to Plaintiff and the Class Members, in

11  Defendants' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure

12  statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii)

13  that payments on the notes at the teaser rate will result in negative amortization and that the principal

14  balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted

15  and does not reflect the actual interest that Plaintiff and Class members would be paying on the Note(s).

16

17  ## II.

18  ## THE PARTIES

19  2.    Plaintiff, ENEIDA AMPARAN ("Plaintiff") is, and at all times relevant to this

20  Complaint, was an individual residing in San Jose, California.  On or about January 5, 2006, Plaintiff

21  refinanced her existing home loan and entered into an Option ARM loan agreement with Defendants.

22  The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as <u>Exhibit 1</u> is a

23  true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

24  3.    Defendant, PLAZA HOME MORTGAGE, INC., is a California corporation licensed to

25  do, and is doing business in California.  At all relevant times hereto PLAZA HOME MORTGAGE,

26  INC. was and is engaged in the business of promoting, marketing, distributing and selling the Option

27  Arm loans that are the subject of this Complaint.  PLAZA HOME MORTGAGE, INC. transacts

28  business in Santa Clara County, California and at all relevant times promoted, marketed, distributed, and

1  sold Option Arm loans throughout the United States, including Santa Clara County, California.  PLAZA

2  HOME MORTGAGE, INC. has significant contacts with Santa Clara County, California, and the

3  activities complained of herein occurred, in whole or in part, in Santa Clara County, California.

4         4.     Defendant, WASHINGTON MUTUAL MORTGAGE SECURITIES CORP.

5  ("WASHINGTON MUTUAL"), is and/or was a Delaware Corporation.  Plaintiff is informed, believes,

6  and thereon alleges that Defendant PLAZA HOME MORTGAGE, INC. sold Plaintiff ENEIDA

7  AMPARAN's ARM loan that is the subject of this action to Defendant WASHINGTON MUTUAL.  15

8  U.S.C. § 1641 states that "[a]ny person who purchases or is otherwise assigned a mortgage ... shall be

9  subject to all claims and defenses with respect to that mortgage that the consumer could assert against

10  the creditor of the mortgage."  Plaintiff is therefore informed and believes that WASHINGTON

11  MUTUAL purchased or otherwise is and was an assignee of some or all of the Option ARM loans that

12  are the subject of this Complaint.  Plaintiff is further informed, believes, and thereon alleges that

13  Defendant WASHINGTON MUTUAL was and is engaged in the business of purchasing, packaging and

14  securitizing some or all of the Option ARM loans that are the subject this Complaint.

15         7.     Defendants, PLAZA HOME MORTGAGE, INC., WASHINGTON MUTUAL, and

16  DOES 1 through 10, shall hereinafter be referred to collectively as "Defendants."

17         8.     At all times mentioned herein, Defendants, and each of them, were engaged in the

18  business of promoting, marketing, distributing, selling, servicing, owning, or are and were the assignees

19  of the Option ARM loans that are the subject of this Complaint, throughout the United States, including

20  Santa Clara County, California.

21         9.     At all times mentioned herein, Defendants, and each of them, were engaged in the

22  business of promoting, marketing, distributing, selling, servicing, owning, or are and were the assignees

23  of the Option ARM loans that are the subject of this Complaint, throughout the United States, including

24  Santa Clara County, California.

25         10.    Plaintiff is informed, believes, and thereon alleges, that each and all of the

26  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

27  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

28  for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1  caused by the conduct of Defendants.

2      11.    Plaintiff is informed, believes, and thereon alleges, that at all times material hereto and

3  mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the

4  agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-

5  ego of each of the remaining Defendants and were at all times acting within the purpose and scope of

6  such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

7  partnership or employment and with the authority, consent, approval and ratification of each remaining

8  Defendant.

9      12.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,

10 employee, assignee and/or joint venturer of each of the other Defendants and was acting within the

11 course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the

12 permission and consent of each of the other Defendants.

13     13.    Plaintiff is informed, believes, and thereon alleges, that Defendants, and each of them,

14 are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or

15 otherwise conducted business in California.  Defendants, and each of them, are corporations or other

16 business entities, form unknown, have, and are doing business in this judicial district.

17     14.    Plaintiff is informed, believes, and thereon alleges, that DOES 1 through 10, inclusive,

18 are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO

19 trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

20 assignees to the loans which are the subject of this action.  Plaintiff will seek leave of Court to replace

21 the fictitious names of these entities with their true names when they are discovered by  herein.

22     15.    The true names and capacities, whether individual, corporate, associate or otherwise, of

23 Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and

24 Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff alleges, on information and

25 belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiff will seek leave of

26 Court to amend this Complaint when the names of said Doe defendants have been ascertained.

27     16.    Plaintiff is informed, believes, and thereon alleges, that at all times relevant during the

28 liability period, that Defendants, and each of them, including without limitation those Defendants herein

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1  sued as DOES, were acting in concert or participation with each other, or were joint participants and

2  collaborators in the acts complained of, and were the agents or employees of the others in doing the acts

3  complained of herein, each and all of them acting within the course and scope of said agency and/or

4  employment by the others, each and all of them acting in concert one with the other and all together.

5

6                                              **III.**

7                                **JURISDICTION AND VENUE**

8          17.    This Court has subject matter jurisdiction pursuant to 15 U.S.C §§ 1601 *et seq.* and 28

9  U.S.C. § 1331.

10         18.    This Court has personal jurisdiction over the parties in this action by the fact that

11 Defendants are either individuals who reside in this District within California or are corporations duly

12 licenced to do business in California.

13         19.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

14 a substantial part of the events and omissions giving rise to the claims occurred in this district, and

15 because there is personal jurisdiction in this district over the named Defendants because they regularly

16 conduct business in this judicial district.

17

18                                              **IV.**

19                        **FACTS COMMON TO ALL CAUSES OF ACTION**

20         20.    PLAZA HOME MORTGAGE, INC. ("PLAZA HOME MORTGAGE") sold a variety of

21 home loans.   The ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.

22  Based upon information provided by Defendant PLAZA HOME MORTGAGE., Plaintiff's loan note

23 was sold to Defendant WASHINGTON MUTUAL MORTGAGE SECURITIES CORP.

24 ("WASHINGTON MUTUAL").

25         21.    The instant action arises out of residential mortgage loan transactions in which

26 Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff and

27 the Class members, in writing, as required by law.

28 / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

22.     This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

23.     Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiff and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiff and the Class members were charged a different, much greater interest rate than promised.  Further, Defendants disguised from Plaintiff the Class members the fact that Defendant PLAZA HOME MORTGAGE's Option ARM loan product was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans because Defendant included a stiff and onerous prepayment penalty provision making it extremely difficult to extricate themselves from the loans.

24.     The Option ARM loans Defendant PLAZA HOME MORTGAGE sold to Plaintiff and the Class members violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendant failed to make these disclosures in connection with the Option ARM loan sold to Plaintiff and the Class.

25.     At all times relevant, Defendant PLAZA HOME MORTGAGE promoted their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendant promoted to the general public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Defendant used this "teaser" rate to lure Plaintiff into purchasing Defendant's Option ARM loan product.  However, the low fixed rate was illusory, a false promise.  Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendant's loan, the interest rate applied to Plaintiff's and Class members' loans was immediately and significantly increased.

26.     Plaintiff and others similarly situated were consumers who applied for a mortgage loan through Defendant.  During the loan application process, in each case, Defendant promoted, advertised, and informed Plaintiff and the Class members that in accepting these loan terms, Plaintiff would be able to lower their mortgage payment and save money.  Defendant initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendant's profits.

27.     Based on the Defendant's representations, and the conduct alleged herein, Plaintiff and Class members agreed to finance their primary residence through Defendant's Option ARM loan.  Plaintiff and Class members were told they were being sold a home loan with a low interest rate of between 1% and 3% (the "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years of the loan.  Defendant also informed Plaintiff, and Plaintiff was lead to believe, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendant, the loan was a no negative amortization home loan.  Plaintiff's payments were to be applied to their principal loan balances as well as to interest.

28.     After, the purported three (3) to five (5) year fixed interest period, Plaintiff and the Class members reasonably believed, based on the representations contained in the documents Defendant provided to Plaintiff and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased.  However, the payment schedule provided by Defendant failed to disclose, and by omission failed to inform, these consumers that due to the negative amortization that was purposefully built into these loans, Plaintiff and the Class members would be unable to refinance their homes as their would be little or no equity left to refinance.

29.     Plaintiff believed these facts to be true because that is what the Defendant wanted consumers to believe.  Defendant aggressively marketed their product as a fixed, low interest home loan.  Defendant knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendant also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendant trumpeted their low, fixed rate loans to the public, Defendant knew their promise of low, fixed interest was illusory.

30.     In fact, Defendant PLAZA HOME MORTGAGE's Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate.  Unbeknownst to Plaintiff and Class members, the

actual interest rate they were charged on their loans was not fixed, was not the low teaser interest rate stated in the loan documentation and was in fact considerably higher than going market rates.  And, after purchasing Defendant's Option ARM loan product, Plaintiff and Class members did not actually receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for only a single month.  Immediately, thereafter, Defendant in every instance and for every loan, increased the interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiff and Class members over and above the fixed interest payment rate were added to the principal balance on their home loans in ever increasing increments, substantially reducing the equity in these borrowers' homes.

31.    In stark contrast to this reality, Defendant, through the standardized loan contracts they created and supplied to Plaintiff and the Class, Defendant stated that negative amortization was only a possibility and would occur only if the payments were not sufficient.  Defendant concealed and failed to disclose the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization. Defendant failed to disclose and omitted the objectively material fact that negative amortization would occur if the consumer followed the payment schedule set forth by Defendant in the loan documents. This information was objectively material and necessary for consumers to make an informed decision because this would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates re-set.   In this respect, Defendant utterly failed to place any warning on the Truth and Lending Disclosure Form about negative amortization.

32.    At all times relevant, once Plaintiff and the Class members accepted Defendant's Option ARM loan contract, they had no viable option by which to extricate themselves from these loan because a substantial majority of these Option ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

33.    The Option ARM loans sold by Defendant all have the following uniform characteristics:

(a)    There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiff into entering into the loan.  The rate offered was typically 1%-3%;

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

(b)     The loan has with it a corresponding low payment schedule.  The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

(c)     The initial payments in the required disclosures were equal to the low interest rate being offered.  The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d)     The payment has a capped annual increase on the payment amount; and

(e)     And for a substantial number of the loans, the loans included a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

34.     Defendant uniformly failed to disclose and by omission failed inform consumers, including Plaintiff and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendant was actually never applied to their loans, or, at best, was only applied for thirty(30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised, advertised rate.

35.     Defendant uniformly failed to disclose and by omission failed to inform consumers, including Plaintiff and the Class members, that the payments set forth in Defendant's schedule of payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause the Plaintiff and the Class members to lose the equity they have in their home.

36.     Defendant uniformly failed to disclose and by omission failed to inform consumers, including Plaintiff and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

37.     Disclosing whether a payment will result in negative amortization is of critical importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences of negative amortization is a loss of equity.  Defendants, and each of them, are

1    and at all times relevant hereto, have been aware that clear and conspicuous disclosure of the actual

2    interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of

3    equity is extremely important material information.

4        38.    At all times relevant, Defendants, and each of them, knew or should have known, or were

5    reckless in not knowing, that: (i) the payment rate provided to Plaintiff and the Class members was

6    insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to

7    occur if Plaintiff and the Class members made payments according to the payment schedule provided by

8    Defendant; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members' residence was

9    substantially certain to occur if Plaintiff and the Class members made payments according to the

10   payment schedule provided by Defendant.

11       39.    In spite of its knowledge, Defendant PLAZA HOME MORTGAGE marketed its ARM

12   loans as product that would provide Plaintiff and the Class members with a low interest rate for the first

13   three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by

14   making partial representations of material facts when Defendants had exclusive knowledge of material

15   facts that negative amortization was certain to occur.  This concealed and omitted information was not

16   known to Plaintiff and the Class members and which, at all times relevant, Defendant failed to disclose

17   and/or actively concealed by making such statements and partial, misleading representations to Plaintiff

18   and all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first

19   three (3) to five (5) years of the Note and the payment rate disclosed by Defendant was insufficient to

20   pay both principle and interest, negative amortization occurred.

21       40.    The true facts about Defendant PLAZA HOME MORTGAGES's ARM loans is that they

22   do not provide the low interest rate promised, and are certain to result in negative amortization.

23       41.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

24   loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

25   principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

26   Defendants, and each of them, are and at all times relevant hereto, have been aware that the ability of the

27   disclosed payment rate to pay both principle and interest so as to avoid negative amortization is one of

28   the most important terms of a loan.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

42. To this day, Defendants continue to conceal material information from consumers, and the public, that: (i) the payment rate provided to Plaintiff and the Class members is and was insufficient to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiff and the Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the property is substantially certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendants have refused to clearly and conspicuously disclose to Plaintiff and the Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

43. In the end, the harm caused by Defendants' failures to disclose and omissions grossly outweighs any benefit that could be attributed to them.

44. Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

45. The ARM loans have resulted and will continue to result in significant loss and damage to Plaintiff and  the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

46. The facts which Defendant PLAZA HOME MORTGAGE misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiff and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

47. Defendant PLAZA HOME MORTGAGE engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

48. Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would, in fact, receive a home loan that would actually provide the low interest and payment rate, as promised, for the first three (3) to five (5) years of the loan that is sufficient to pay both principle and interest.

/ / /

49.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

## V.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action on behalf of himself, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiff seeks to represent are defined as follows:

**The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant PLAZA HOME MORTGAGE, INC. on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

**The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant PLAZA HOME MORTGAGE, INC. on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

An appropriate sub-Class exists for the following Class Members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant PLAZA HOME MORTGAGE, INC. on their primary residence located in the United States of America.  Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

51.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

approximately tens of thousands of members.

52.    <u>Commonality</u>:  Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(a)    Whether Defendant's acts and practices violate the Truth in Lending Act;

(b)    Whether Defendant's conduct violated 12 C.F.R. § 226.17;

(c)    Whether Defendant's conduct violated 12 C.F.R. § 226.19;

(d)    Whether Defendant engaged in unfair business practices aimed at deceiving Plaintiff and the Class members before and during the loan application process;

(e)    Whether Defendant, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiff and the Class members;

(f)    Whether Defendant, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(g)    Whether Defendant failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(h)    Whether Defendant failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(i)    Whether Defendants' failure to apply Plaintiff's and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(j)    Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(k)    Whether Defendant's marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only

1  the periodic payments were fixed (for a time) but that interest rates were not, in

2  fact, "fixed;"

3      (l)    Whether the terms and conditions of Defendant's Option ARM home loan are

4             unconscionable;

5      (m)    Whether Plaintiff and the Class are entitled to damages;

6      (n)    Whether Plaintiff and the Class members are entitled to punitive damages; and

7      (o)    Whether Plaintiff and the Class members are entitled to rescission.

8      53.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class members.  Plaintiff

9  and the other Class members were subjected to the same kind of unlawful conduct and the claims of

10 Plaintiff and the other Class members are based on the same legal theories.

11     54.    <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because his interests do

12 not conflict with the interests of the other members of the Class Plaintiff seeks to represent.  Plaintiff has

13 retained counsel competent and experienced in complex class action litigation and Plaintiff intends on

14 prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately

15 protected by Plaintiff and his counsel.

16     55.    <u>Ascertainable Class</u>:  The proposed Classes are ascertainable in that the members can be

17 identified and located using information contained in Defendants' mortgage lending records.

18     56.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

19 23(b)(2), and 23(b)(3):

20     (a)    <u>Risk of Inconsistent Judgments</u>:  The unlawful acts and practices of Defendants, as

21            alleged herein, constitute a course of conduct common to Plaintiff and each Class

22            member.  Prosecution of separate actions by individual Class members would create a

23            risk of inconsistent or varying adjudications which would establish incompatible

24            standards of conduct for Defendants and/or substantially impair or impede the ability of

25            individual Class members to protect their interests;

26     (b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>:  Defendants, and each of

27            them, have acted or refused to act on grounds generally applicable to the Class, thereby

28            making final injunctive relief or corresponding declaratory relief with respect to the Class

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1  as a whole appropriate; and

2  (c)  Predominant Questions of Law or Fact:  Questions of law or fact common to the Class

3  members, including those identified above, predominate over questions affecting only

4  individual Class members (if any), and a class action is superior to other available

5  methods for the fair and efficient adjudication of the controversy.  Class action treatment

6  will allow a large number of similarly situated consumers to prosecute their common

7  claims in a single forum, simultaneously, efficiently, and without the unnecessary

8  duplication of effort and expense that numerous individual actions would require.

9  Further, an important public interest will be served by addressing the matter as a class

10  action.  The cost to the court system of adjudicating each such individual lawsuit would

11  be substantial.

12

13  **VI.**

14  **FIRST CAUSE OF ACTION**

15  **Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.***

16  **(Against All Defendants)**

17  57.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

18  **A.  Defendant's Failure to Clearly and Conspicuously Disclosure A Single APR**

19  **Violates Truth in Lending Laws**

20  58.  15 U.S.C. § 1638(a)(4) requires lenders to disclose only one annual percentage rate

21  ("APR") and not an additional APR that is only applicable for the first 30 days of a loan.

22  59.  The Federal Reserve Board's ("FRB") Commentary to 12 C.F.R § 226.(17)(C)-6 requires

23  that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is

24  charged and, for the remainder of the term, the rate that would have been applied using the index or

25  formula at the time of consummation."

26  60.  15 U.S.C. § 1638(a)(8) and 12 C.F.R § 226.18(e) also requires lenders to provide a

27  descriptive explanation of the APR.

28  / / /

1    61.    12 C.F.R .§ 226.18 (e) defines " APR" as the cost of credit expressed as a yearly rate.

2

3    62.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 requires lenders to make disclosures

4    concerning the APR in a clear and conspicuous manner and a misleading disclosure is as much a

5    violation of TILA as a failure to disclose at all.

6    63.    In addition, the FRB's Commentary § 226.17(a)(1)-1 provides that TILA's clear and

7    conspicuous requirement applies to the disclosure and explanation of the cost of the loan as an APR, and

8    where there is a contradiction between the TILDS and other information provided to the borrower, the

9    disclosure is unclear.

10    64.    At all times relevant during the liability period, Defendants provided Plaintiff and the

11    Class members with Notes that state, at ¶ 2 (A),  "I will pay interest at a *yearly rate* of 1.500%."

12    However, in the TILDS , in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as

13    "[t]he cost of your credit as a *yearly rate*" and then lists an APR of  "7.136%."

14    65.    At all times relevant during the liability period, Defendants violated § 226.17(a)(1)-1 by

15    listing two completely different APRs  in the loan documents.   In particular, for Ms. Amparan, the

16    TILDS lists an APR of 7.136%.  However, the Note lists an APR of  "1.500%."   Thus, the "1.500%"

17    APR stated in the Note contradicts the "7.136%" APR Defendants stated in the TILDS.

18    66.    At all times relevant during the liability period, Defendants failed to clearly and

19    conspicuously explain in the Note or TILDS that the low APR (the same APR upon which Defendants

20    base the written payment schedule provided to Plaintiff) was only offered for the first thirty (30) days of

21    the loan.

22    67.    At all times relevant during the liability period, Defendants also failed to clearly,

23    conspicuously and accurately disclose the APR that it charged Plaintiff and the Class members' on their

24    loans.  Defendants also failed to disclose, and by omission, failed to inform Plaintiff and the Class

25    members that the APR listed in the TILDS was not the APR used to determine the first five years of

26    payments listed in the very same TILDS; rather, Defendants listed payment amounts for the first five

27    years of the loan based on the APR listed in the Note which was correct for *only* thirty days.

28    68.    At all times relevant during the liability period, Defendants created and caused the

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1  contradiction in the loan documents by purposefully disclosing two different APR's in the loan

2  documents it provided to Plaintiffs and the Class members.

3      **B.    Defendant's Failure to Clearly and Conspicuously Disclose That the Payment**

4          **Schedules Are Not Based on the APR Stated in the TILDS Violates TILA**

5      69.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

6  concerning the annual interest rate and payments in a clear and conspicuous manner.  Further, a

7  misleading disclosure is as much a violation of TILA as a failure to disclose at all.

8      70.    As for Plaintiff and the Class members Option ARM loans, Defendant violated 12 C.F.R.

9  § 226.17 and 12 C.F.R. § 226.19 in that they failed to clearly and conspicuously disclose the annual

10  interest rate upon which the payments listed in the TILDS are based.

11      71.    The scheduled payment amounts and APR listed in the Note and TILDS for each of the

12  subject loans are unclear and inconspicuous.  In fact, the payment amounts for the first three to  five

13  years are not based on the APR listed in the TILDS but instead, were based upon an APR listed in the

14  Note that existed for only thirty (30) days.

15      72.    At all times relevant, Defendant knowingly and intentionally included in each of the

16  TILDS a schedule of payments which was not based upon the interest rate listed in these same

17  documents.  Defendant's failure to clearly and conspicuously disclose the payment amounts due based

18  on the listed APR was, and is, deceptive.

19      73.    Further, in addition to Defendant's failure to disclose in the Note and the TILDS that the

20  payments listed were not based upon the APR listed, Defendant knowingly and intentionally expressly

21  and/or impliedly represented in the loan documents that the payments would be applied to both principal

22  and interest.  However, in truth, if Plaintiff followed the payment schedule provided by Defendant, the

23  payments were guaranteed to be insufficient to pay the principal and interest on the loan.

24      74.    At all times relevant, Defendant failed to clearly and conspicuously disclose to Plaintiff

25  and the Class members that if they made payments according to the payment schedule set forth in the

26  TILDS, that negative amortization was not just a mere possibility, it was an absolute certainty.

27      75.    At all times relevant, Defendant purposefully and intentionally failed to disclose to

28  Plaintiff, and all others similarly situated, the annual interest rate upon which the payment schedule was

based in order to mislead and deceive Plaintiff and Class members into believing that they would be getting a loan with a low fixed payment rate that would be sufficient to pay both interest and principal.

76.    At all times relevant, the payment amount provided by Defendant was intended to and did deceive consumers into falsely believing they would, in fact, receive the low interest rate upon which the payment schedule is based.  While the Note states the amount of Plaintiff's initial monthly payment, however, the initial monthly payment amounts stated in the Note and TILDS are not, in anyway related to the interest rate listed in the Note(s) and TILDS.

77.    Defendant employed the aforementioned bait-and-switch tactics in a common and uniform class-wide basis.  In particular, had Defendant clearly and conspicuously disclosed a payment amount sufficient to cover both principle and interest, the payment amounts would have to have been almost double the payment amounts listed.

78.    The TILDS are also deceptive for much the same reason.  The TILDS list a schedule of payments, yet for up to the five years the listed payment amounts have no relation to, and are also not based on the annual interest rate listed in the TILDS.

79.    At all times relevant, Defendant failed to clearly, conspicuously, and accurately disclose a payment amount that corresponds to the APR being charged on the loan and that was  sufficient to pay the true costs of the loan.  Plaintiff and the Class members reasonably believed that if they made the payments according to Defendant's payment schedule, the payments would, in fact, be paying off the loan.  However, the true fact is that the payment amounts stated in Defendant's payment schedule did not include any principal on the loans at all and only covered a portion of the interest Defendants were charging on these loans.

80.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form.  For example, while the regulation requires no mathematical progression or format, *the disclosures must be presented in a way that does not obscure the relationship of the terms to each other*…"

81.    At all times relevant, Defendant PLAZA HOME MORTGAGE.'s Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first five years of the loans, bear no relationship to the APR listed in the TILDS.  Therefore, as a direct and

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1    proximate result, the form of disclosure used by Defendant obscured the relationship between the APR

2    listed in the Note(s) and the APR listed in the TILDS and the payment schedule.

3    **C.    Defendant's Failure to Clearly and Conspicuously Disclose Negative Amortization**

4    **Violates the Truth in Lending Laws**

5    82.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential

6    home loans:

7    **§ 226.19.  Certain residential mortgage and variable-rate**

8    **transactions.** . . .

9    (b) Certain variable-rate transactions. If the annual percentage rate may

10    increase after consummation in a transaction secured by the consumer's

11    principal dwelling with a term greater than one year, the following

12    disclosures must be provided at the time an application form is provided

13    or before the consumer pays a non-refundable fee, whichever is earlier. . .

14    (vii) *Any rules relating to changes in the index, interest rate, payment*

15    *amount, and outstanding loan balance including, for example, an*

16    *explanation of interest rate or payment limitations, negative amortization,*

17    *and interest rate carryover*. (Emphasis added.)

18    83.    The negative amortization disclosure is required and must be made clearly and

19    conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state

20    whether the loan and payments establihed under the terms dictated by the Defendant is a negative

21    amortizing loan.

22    84.    In 1995, and continuing each time new Official Staff Commentary was issued, the

23    Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such

24    as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about

25    negative amortization:

26    12 CFR Part 226

27    [Regulation Z; Docket No. R-0863]

28    Monday, April 3, 1995

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1    AGENCY: Board of Governors of the Federal Reserve System.

2    ACTION: Final rule; official staff interpretation.

3    "For the program that gives the borrower an option to cap

4    monthly payments, the creditor must fully disclose the rules

5    relating to the payment cap option, including the effects of

6    exercising it (such as **negative amortization occurs** and

7    that the principal balance **will increase**)…" (Found at

8    C.F.R. § 226.19)

9    85.    At all times relevant, statutory and common law in effect make it unlawful for a lender,

10   such as Defendant PLAZA HOME MORTGAGE., to fail to comply with the Federal Reserve Board's

11   Official Staff Commentary as well as Regulation Z and TILA.

12   86.    Defendants sold Plaintiff and the Class members Option ARM loans which have a

13   variable rate feature with payment caps.  Defendant failed to include any reference in the TILDS or in

14   the Note(s) that negative amortization would occur if Plaintiff and the Class members followed the

15   payment schedule provided by Defendant.

16   87.    In fact, the only place in the Note where Defendant even inferentially references negative

17   amortization caused Plaintiff and all other similarly situated reasonable persons to believe that negative

18   amortization is only a mere possibility, rather than an absolute certainty.  In fact, these loans were

19   designed in such a way so as to make negative amortization an absolute certainty.  And, even when a

20   separate explanation was provided, Defendant omitted the important material fact that these loans and

21   payment schedules would, in fact, guarantee negative amortization.

22   88.    Defendants' statements in the Note(s), at ¶ 3(C), "[i]f the Minimum Payment is not

23   sufficient to cover the amount of the interest due then negative amortization will occur," and, ¶ 3(E)

24   "[m]y monthly payment *could* be less than *or greater than* the amount of the interest portion of the

25   monthly payment I owe ..."  were half-truths and did not alert or inform Plaintiff that the payment

26   schedule provided by Defendants would absolutely guarantee that negative amortization was going to

27   occur on these loans.  Rather, Defendants made it appear that as long as the payments were made

28   according to the schedule listed in the TILDS, that there would be no negative amortization.

-20-

89.    At all times relevant, Defendant's statement in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore was misleading and deceptive.  In fact, Defendant PLAZA HOME MORTGAGE.'s Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment could be less, or "may" be less, when Defendants knew that the payments were less, and would always be less, than the full amount required to pay both principle and interest.

**D.    Defendant's Failure to Clearly and Conspicuously Disclose The Legal Obligation Violates Truth in Lending Laws**

90.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties."

91.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that:  "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction.  In the case of disclosures required under  § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided."

92.    The Official binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

93.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

94.    At all times relevant during the liability period, Defendant's Option ARM loans violated 12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not disclose, and by omission, failed to disclose what Plaintiff and the Class members were legally obligated to pay.  In particular, the Note(s) charged these borrowers a much higher monthly amount than what Defendant disclosed.  Defendant accomplished this deception by only listing a partial payment in the TILDS, rather than a payment amount that was sufficient to pay what these  borrowers were being charged for their loans, and were legally obligated to pay.

95.     As a direct and proximate result of Defendants' omissions and failures to clearly and conspicuously disclose Plaintiff's and the Class members' legal obligations under the loans, Defendants took the partial payments and secretly added the deficit, each month, to principal, thereby causing negative amortization to occur.

**E.     Defendant's Failure to Disclose the Composite APR Violates Truth in Lending Laws**

96.     Defendant provided Plaintiff and the Class members with multiple, conflicting annual interest rates when describing the costs of this loan.  On the TILDS, Defendant set forth one annual interest rate, while on the Note, Defendant set forth a different annual interest rate.

97.     The FRB's Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."

> "in a variable-rate transaction with a...discounted or premium rate, ***disclosures should not be based solely on the initial terms***. In those transactions, ***the disclosed annual percentage rate should be a composite rate*** based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term."

98.     The reason for this requirement is clear.  Consumers cannot make an informed decision when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon Defendant to show the composite interest rate in effect so that the borrowers can understand exactly what they will be paying for the loan.

99.     A lender violates TILA, and Reg. Z  by failing to list the composite annual interest rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiff and Class members by Defendant is a variable-rate loan.  At all times relevant during the liability period, Defendant listed an annual interest rate in the Note(s) that, in truth, would only be provided for the first thirty (30) to forty-five (45) days of a thirty year loan, and would, with one hundred percent certainty, be increased after that first month.  Because Defendant failed to clearly and conspicuously disclose the composite annual percentage rate on these loans, and instead listed a different interest rate in the documents provided to consumers, Defendant violated TILA and Regulation Z, and failed to provide disclosures that did not obscure relevant information.

1

2

**F.** **Defendant's Failure to Clearly and Conspicuously Disclose that the Initial Interest**

**Rate is Discounted Violates TILA**

3

4

5

100.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over and above that

indexed rate.

6

7

8

9

10

101.    TILA and Regulation Z require that when the interest rate on a loan is a "discounted rate"

( i.e., not based on the index and margin) a separate disclosure is required.  The disclosure must also

inform borrowers that, after the discounted rate falls away, the interest rate will increase and it must

conspicuously describe all of the circumstances under which the interest rate will increase.  Further, the

disclosure must inform the borrower what the true cost of the loan is.

11

12

13

14

102.    The Federal Reserve Board established disclosure requirements for variable rate loans.

26 C.F.R. § 226.19 requires lenders to disclose the frequency of interest rate and payment adjustments to

borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

payment changes, a creditor must disclose the frequency and timing of both types of changes.

15

16

17

18

103.    The Notes at issue only stated that the interest rate "may" increase in the future.

However, it was absolutely certain, and not merely possible, that the interest rate would increase above

the discounted annual interest rate after thirty (30) days.   At all times relevant, Defendant failed to

clearly, conspicuously and unambiguously disclose this critical fact as required by law.

19

20

21

22

23

24

104.    Further violating TILA's disclosure requirements, Defendant's loan documents state that

the interest rate *may* increase during the term of this transaction if the index increases.  That statement is

incomplete and misleading, as an increase in the index was not the only thing that could cause an

increase in the interest rate.  Because the disclosed interest rate was discounted, it was absolutely certain

to increase even without any change in the index.  Thus, Defendant's disclosures were unclear,

inconspicuous, ambiguous and misleading in violation of TILA.

25

26

27

28

105.    In stark contrast to the incomplete, misleading, contradictory and false statements that

Defendant made to Plaintiff and the Class regarding the interest rate applicable to the loans here at issue,

Defendants unambiguously told their investors (but not Plaintiff or the Class) that the APR listed in the

Note would apply for just one month, after which time it would be replaced by a monthly adjustable

interest rate based on the margin and index:

106. Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class members that the initial interest rate was discounted, and that it was absolutely certain to increase even when the index did not rise. Due to the initial discounted interest rate being listed at 1.000%, the interest rate would increase because the index and margin were several points higher. Even when Defendant did provide a disclosure that stated the initial payment was not based on the index, they did so in a manner that was not clear and conspicuous. Because the loan documents failed to provide this extremely important material information in a clear and conspicuous manner that did not obscure its importance, Defendants' disclosure failed to satisfy the requirements of TILA.

107. Defendant failed to disclose to Plaintiff and the Class members that their interest rate was, with 100% certainty, going to increase, regardless of whether the index upon which their loans are based changed. As such, Defendants violated TILA and Regulation Z by providing Plaintiff and the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

108. Defendant also failed to disclose all of the ways by which the interest rate applicable to Plaintiff's and Class members' loans could increase, in violation of TILA.

**G.** **Defendant's Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

109. The Option ARM loans at issue contained a variable rate feature with an initial teaser rate with payment caps. The payment cap is a limit on how much the payment may be increased annually. Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year. The loans issued by Defendant PLAZA HOME MORTGAGE. had a 7.5% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.5%. (i.e. a $1,000 monthly payment in year one, could go to a $1,075 payment in year two.)

110. The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times relevant during the liability period, Defendants had a duty to Plaintiff and the Class members to disclose in the payment

schedule of the TILDS the effect the payment cap would have on the loans.

111.    Defendants failed to disclose, and by omission, failed to inform Plaintiff and the Class members that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to principle.

112.    As a direct and proximate result, Defendants failed to disclose, and by omission, failed to inform Plaintiff  and the Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

113.    The violations of TILA and Regulation Z described in this Complaint are apparent on the face of the Note, TILDS and other disclosure documents provided to Plaintiff and the Class because the disclosures provided can be determined to be incomplete or inaccurate by a comparison among the TILDS, the other disclosure statements, and the Note described herein.

114.    As a direct and proximate result of Defendants' violations of TILA, as alleged herein, Plaintiff and the Class members have suffered injury in an amount to be determined at time of trial.  If Defendant had not violated TILA and had instead clearly and conspicuously disclosed the material terms of Defendant's Option ARM loan, as alleged herein, Plaintiff and the Class members would not have entered into the home loan contracts which are the subject of this action.  Because Defendant failed to make the proper disclosures required under TILA, Plaintiff and the Class members now seek redress in an amount and/or type as proven at time of trial.

115.    WHEREFORE, Plaintiff and the Class members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiff and the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's individual mortgage and those of any class member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

# VII.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et. seq.* -**

**"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

116.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

117.    Plaintiff brings this cause of action on behalf of himself, on behalf of the Class, and in his capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business & Professions Code §§17200, *et seq.*, which prohibits all unlawful business acts and/or practices.

118.    Plaintiff asserts these claims as he is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business & Professions Code §§ 17200, *et seq.*

119.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

120.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, *et seq.*

121.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of Business & Professions Code §§17200, *et seq.*  These predicate unlawful business acts and/or practices include Defendants failure to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.*, Regulation Z and Official Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above, Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan to Plaintiff and the Class members as required under TILA.

122.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

/ / /

123.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

124.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

125.    The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

126.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and the Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

127.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

**VIII.**

**THIRD CAUSE OF ACTION**

**Fraudulent Omissions**

**(Against All Defendants)**

128.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

129.    As alleged herein, pursuant to TILA, 15 U.S.C. §§1601, *et seq*.,  Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to Plaintiff, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial

1   interest rate on the note was discounted.

2         130.    Defendant PLAZA HOME MORTGAGE. further had a duty to disclose to Plaintiff, and

3   each Class member (i) the actual interest rate being charged on the Note(s), (ii) that negative

4   amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest

5   rate on the note was discounted, based upon Defendants' partial representations of material facts when

6   Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.

7         131.    The Note(s) state at ¶ 3 (A) "I will make a payment every month" [and] " I will make

8   these payments every month until I have paid all the Principal and Interest and any other charges that I

9   owe under this Note."   The Note(s) then state, at ¶ 3(D), while referencing the Payment Cap provision,

10  that "[t]his Payment Cap applies only to *the Principal and Interest payment* ..."  And in ¶ 7(A), under

11  the heading "BORROWERS FAILURE TO PAY AS REQUIRED," the Note(s) state "[t]he amount of

12  the charge will be 5.000% of my overdue *payment of Principal and Interest*."  However, the true facts

13  are that the payments schedules provided by Defendants were completely insufficient to pay both

14  interest and principal.  In fact, the payment amounts provided in the TILDS were not even sufficient to

15  pay enough interest to avoid negative amortization which, under the terms of the Note(s) was absolutely

16  certain to occur.

17        132.    The Note(s) further state, at ¶ 3(C) "If the Minimum Payment is not sufficient to cover

18  the amount of the interest due then negative amortization will occur."  However, the payments provided

19  by Defendants in the TILD were absolutely incapable of covering the amount of interest due and

20  therefore this statement was false in that it omitted this material fact.

21        133.    The Note(s) further state, at ¶ 3(E) that "my Minimum Payment *could be less* than or

22  greater than the amount of the interest portion of the monthly payment."  And, "[f]or each month that

23  my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my

24  monthly payment from the amount of the interest portion and will add the difference to my unpaid

25  Principal, and interest will accrue on the amount of this difference ..."   However, the payment schedules

26  provided by Defendants in the TILDS were absolutely incapable of covering the amount of interest due

27  and therefore these statements were false in that it omitted this material fact.

28  / / /

134.    The Note(s) list an interest rate and a payment amount based on that initial interest rate. However, the TILDS Defendants gave to Plaintiff and the Class members include the schedule of payments (including that initial payment rate) but yet disclose a different interest rate.  In truth, the payment schedule stated in the TILDS is wholly unrelated to the true interest rate being charged on the loans and, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiff and the Class members of this important material information.

135.    The aforementioned omitted information was not known to Plaintiff and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

136.    Defendants, and each of them, failed to disclose, and by omission failed to inform Plaintiff and each Class member that (i) the payment rate provided to Plaintiff and the Class members on the TILDS was insufficient to pay both principle and interest; (ii) that negative amortization was absolutely certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members' residence was substantially certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendants.

137.    As alleged herein, Defendants had a duty to disclose to Plaintiff, and each Class member and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted. The concealed and omitted information was not known to Plaintiff and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the

payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

138.     From the inception of the Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiff and the Class members, regarding the true facts concerning the actual interest rate charged on the loans, that negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiff and the Class members in the TILDS.

139.     Defendants have known from the inception of their Option ARM loan scheme that these loans, (i) do not provide the promised annual interest rate for the first three (3) to five (5) years of the Note, (ii) that negative amortization would occur and that Plaintiff's and the Class members' principle balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the interest that consumers were being charged on the loans.

140.     Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan, for the first three (3) to five (5) years of the note and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principle and interest.

141.     The omitted information, as alleged herein, was material to Plaintiff and each Class member in that had the information be disclosed, Plaintiff and each Class member would not have entered into the loans.

142.     As a direct and proximate result of Defendants' failures to disclose and omission of material facts, as alleged herein, Plaintiff and each Class member has suffered damages, which include, but are not limited to the loss of equity Plaintiff and each Class member had in their homes prior to entering these loans.

143.     The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiff, and others similarly situated.  Accordingly, Plaintiff, and the others similarly situated seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the

1    future.

2

3    144.    WHEREFORE, Plaintiff and members of the Class are entitled to all legal and equitable

4    remedies provided by law, including but not limited to actual damages, exemplary damages,

5    prejudgment interest and costs.

6

7                                                   **IX.**

8                              **FOURTH CAUSE OF ACTION**

9    **Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*,**

10                  **"Unfair" and "Fraudulent" Business Acts or Practices**

11                              **(Against All Defendants)**

12    145.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

13    146.    Plaintiff brings this cause of action on behalf of himself, on behalf of the Class, and in his

14    capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive

15    business acts and/or practices pursuant to California Business & Professions Code §§ 17200, *et seq.*,

16    which prohibits all unfair and/or fraudulent business acts and/or practices.

17    147.    Plaintiff asserts these claims as he is a representative of an aggrieved group and as

18    private attorney general on behalf of the general public and other persons who have expended funds that

19    the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

20    provided by California Business & Professions Code §§ 17200, *et seq*.

21    148.    The instant claim is predicated on the generally applicable duty of any contracting party

22    to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business

23    practices.  The Plaintiff and the Class members hereby seek to enforce a general proscription of unfair

24    business practices and the requirement to refrain from deceptive conduct.  The instant claim is

25    predicated on duties that govern anyone engaged in any business and anyone contracting with anyone

26    else.

27    149.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and

28    concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1   Defendants, and each of them, marketed and sold Plaintiff and the Class members a deceptively devised

2   financial product.  Defendants marketed and sold their Option ARM loan product to consumers,

3   including Plaintiff, in a false or deceptive manner.  Defendants marketed and advertised to the general

4   public through brochures, flyers and other substantially identical marketing material, a loan which

5   appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative

6   amortization.  Further, Defendants disguised from Plaintiff and the Class members the fact that

7   Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

8       150.    Defendants lured Plaintiff and the Class members into the Option ARM loan with

9   promises of low fixed interest.  Once Plaintiff and the Class members entered into these loans,

10  Defendants switched the interest rate charged on the loans to a much higher rate than the one they

11  advertised and promised to Plaintiff and the Class members.  After entering these loans, Class members

12  could not escape because Defendants purposefully placed into these loans an extremely onerous

13  prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

14  these loans.  Thus, once on the hook, consumers could not escape from Defendants loans.

15      151.    Plaintiff and Class members were consumers who applied for a mortgage loan through

16  Defendants.  During the loan application process, in each case, Defendants uniformly promoted,

17  advertised, and informed Plaintiff and Class members that in accepting these loan terms, Plaintiff and

18  Class members would be able to lower their mortgage payment and save money.

19      152.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,

20  typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate,

21  the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants

22  did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate that

23  Defendants would actually charge Plaintiff and the Class members on their outstanding loan balances.

24      153.    Based on the Defendants' representations and conduct, Plaintiff and the Class members

25  agreed to finance their primary residence through Defendants' Option ARM loan.  Plaintiff and the

26  Class members were told they were being sold a home loan with a low interest rate, fixed for the first

27  three (3) to five (5) years of the loan.  Plaintiff and the Class members were also lead to believe that if

28  they made payments based on this advertised interest rate, and the payment schedule provided to them

1    by Defendants, the loan was a no negative amortization home loan.  After, the fixed interest period,

2    Plaintiff and the Class members were told their rate "may" change.  And, Plaintiff believed they would

3    then be able to re-finance to another home loan.  Plaintiff and the Class members believed these facts to

4    be true because that is what the Defendants wanted consumers to believe, that is what Defendants lead

5    consumers to believe.

6        154.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

7    knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and

8    profitable product for them.  Defendants also knew, however, that they were marketing their product in a

9    false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public,

10   Defendants knew, however, that this was not entirely true.

11       155.    In fact, Defendants' Option ARM loan possessed a low, fixed **payment** but not a low,

12   fixed interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were

13   charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product, Plaintiff

14   and class members never actually received the benefit of the low advertised interest rate, or, in some

15   cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendants in

16   every instance and for every loan increased the interest rate they charged Plaintiff and the Class

17   members.  Once Plaintiff and Class members accepted Defendants' Option ARM loan, they had no

18   viable option to extricate themselves because of these loan agreements included a draconian pre-

19   payment penalty.

20       156.    Defendants perpetrated a bait and switch scheme on Plaintiff and Class members.

21   Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe

22   the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in

23   order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

24       157.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

25   constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California

26   Business & Professions Code §§ 17200, *et seq*.

27       158.    By engaging in the above-described acts and practices, Defendants have

28   committed one or more acts of unfair competition within the meaning of Business & Professions Code

§§ 17200, *et seq*.

159.    Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

160.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

161.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

162.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

163.    The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*.

164.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants' ARM loans as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring in the future.

165.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

166.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys' fees and costs, declaratory relief, and a

1   permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

2

3                                          X.

4                            **FOURTH CAUSE OF ACTION**

5                               **Breach of Contract**

6                            **(Against All Defendants)**

7        167.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

8        168.    Plaintiff and Class members entered into a written home loan agreement – the contract or

9   Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiff or

10  Class members.  The Note describes terms and respective obligations applicable to the parties herein.

11       169.    The Note describes Plaintiff's and Class members' interest rate on the loan as a low

12  interest rate, typically between 1% and 3%.  In addition, as required by federal law, the Defendants

13  provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment

14  schedule based on that low 1% to 3% interest rate.  For the first three (3) to five (5) years the payment

15  schedule shows that Plaintiff's and Class members' monthly payment obligations to Defendants are the

16  exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the

17  interest rate actually charged by Defendants on the loans was the low interest rate promised.

18       170.    Defendants drafted the Note and did not allow Plaintiff or the Class members any

19  opportunity to make changes to the Note and due to Defendants' superior bargaining position, the Note

20  was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

21       171.    Defendants expressly and/or through their conduct and actions agreed that Plaintiff's and

22  the Class members' monthly payment obligations would be sufficient to pay both the principal and

23  interest owed on the loans.  Defendants breached this agreement and never applied any of Plaintiff's and

24  the Class members' payments to principal.

25       172.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and

26  Class members' loans, show that the payment amounts owed by Plaintiff and Class members to

27  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

28  interest actually charged on the loan was the low interest rate promised.  If the Defendants did as

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1    promised, the payments would have been sufficient to pay both principal and interest amounts.

2        173.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rates and

3    applied *no part* of Plaintiff's and Class members' payments were applied to the principal balances on

4    their loans.  In fact, because Defendants charged more interest than was agreed to and payments, as

5    disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus

6    principal balances increased (which is the negative amortization built into the loan).

7        174.    Defendants breached the written contractual agreement by failing to apply any portion of

8    Plaintiff's and the Class members' monthly payments towards their principal loan balances.

9        175.    Plaintiff and the Class members, on the other hand, did all of those things the contract

10   required of them.  Plaintiff and the Class members made monthly payments in the amount required by

11   the terms of the Note and reflected in the payment schedule prepared by Defendants.

12       176.    As a result of Defendants' breach of the agreement, Plaintiff and the Class members have

13   suffered harm.  Plaintiff and Class members have incurred additional charges to their principal loan

14   balance.  Plaintiff and Class members have incurred and will continue to incur additional interest

15   charges on the principal loan balance and surplus interest added to Plaintiff's and Class members'

16   principal loan balance.  Furthermore, Defendants' breach has placed Plaintiff and Class members in

17   danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class

18   members' principal loan balances to increase and limited these consumers' ability to make their future

19   house payments or obtain alternative home loan financing.

20       177.    At all times relevant, there existed a gross inequality of bargaining power between the

21   parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

22   exploited their superior bargaining position and foisted upon Plaintiff and the Class members extremely

23   harsh, one-sided provisions in the contract, which Plaintiff and Class members were not made aware of

24   and did not comprehend (*e.g*., Defendants' fraud and failures to clearly and conspicuously disclose as

25   alleged herein), and which attempt to severely limit Defendants' obligations under the contracts at the

26   expense of Plaintiff and Class members, as alleged herein.  As a result of these extremely harsh, one-

27   sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate

28   for one month or less, these provisions are unconscionable and therefore unenforceable.

178.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, compensatory damages proximately caused by Defendants' breach of contract as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XI.

### FIFTH CAUSE OF ACTION

**Tortuous Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against All Defendants)**

179.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

180.    Defendants entered into written agreements with Plaintiff and Class members based on representations Defendants made directly and indirectly to Plaintiff and the Class members about the terms of their loans.

181.    Defendants expressly represented to Plaintiff and the Class members that they would provide loans secured by Plaintiff's and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

182.    Defendants also represented that if Plaintiff and the Class members made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note expressly states and/or implies that Plaintiff's and Class members' monthly payment obligation ***will*** be applied to pay both principal and interest owed on the loan.  The Note further states that for each monthly payment Plaintiff and the Class members interest shall be paid before principal.

183.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

184.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rate and applied ***no part*** of Plaintiff's and Class members' payment to principal.  In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiff's and the Class members'

payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiff and the Class members owed on their homes.

185.    Defendants unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the contract.  These loans will cost Plaintiff and Class members thousands of dollars more than represented by Defendants.  Plaintiff and Class members did not receive the fixed low interest rate home loan promised them by Defendants.  Defendants have caused Plaintiff and Class members to lose equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of one of their most important investments.

186.    Plaintiff and Class members, on the other hand, did all of those things the contract required of them.  Plaintiff and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

187.    At all times relevant, Defendants unreasonably denied Plaintiff and members of the Class the benefits promised to them under the terms of the Note, including but not limited to a low interest rate for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment amount sufficient to pay both principle and interest so as to avoid negative amortization and the other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein

188.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein.

189.    Defendants' breaches, as alleged herein were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

190.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

/ / /

-38-

191.    Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the General Public.

192.    At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

193.    As a result of Defendants' conduct, Plaintiff and Class members have suffered harm. Plaintiff and the Class members have incurred additional charges to their principal loan balance. Plaintiff and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class members' principal loan balance.  Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiff and the Class members in danger of losing their homes through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiff's and the Class members' principal loan balances to increase limiting these consumers' ability to make their future house payments or obtain alternative home loan financing.

194.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

# XII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant, jointly and severally, as follows:

A.   An order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class;

B.   For actual damages according to proof;

C.   For compensatory damages as permitted by law;

D.   For consequential damages as permitted by law;

E.   For statutory damages as permitted by law;

F.   For punitive damages as permitted by law;

G.   For rescission;

H.   For equitable relief, including restitution;

I.   For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

J.   For interest as permitted by law;

K.   For Declaratory Relief;

L.   For a mandatory injunction requiring Defendants to permanently include in every Option ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. § 226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure statement(s) that payments on the variable interest rate loan during the initial period at the teaser rate will result in negative amortization and that the principal balance will increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure that the initial interest rate provided is discounted and does not reflect the actual interest that Plaintiff and Class members would be paying on the Note(s).

M.   For reasonable attorneys' fees and costs; and

/ / /

1    N.    For such other relief as is just and proper.

2    DATED: July 21, 2008                    **ARBOGAST & BERNS LLP**

3

4                                    By:  ___*/s/ David M. Arbogast*___
                                          David M. Arbogast, Esq.
                                          19510 Ventura Boulevard, Suite 200
5                                         Tarzana, California 91356
                                          Phone: (818) 961-2000
6                                         Fax:    (310) 861-1775

7                                         Paul R. Kiesel, Esq.
                                          Patrick Deblase, Esq.
8                                         Michael C. Eyerly, Esq.
                                          **KIESEL BOUCHER LARSON LLP**
9                                         8648 Wilshire Boulevard
                                          Beverly Hills, California 90210
10                                        Phone:  (310) 854-4444
                                          Fax:    (310) 854-0812
11
                                          Jonathan Shub (SBN 237708)
12                                        **SEEGER WEISS LLP**
                                          1515 Market Street, Suite 1380
13                                        Philadelphia, PA 19107
                                          Phone: (215) 564-2300
14                                        Fax    (215) 851-8029

15                                        Attorneys for Plaintiff ENEIDA AMPARAN and all
                                          others Similarly Situated
16

17                          **DEMAND FOR JURY TRIAL**

18    Plaintiff hereby demands a trial by jury to the full extent permitted by law.

19    DATED: July 21, 2008                    **ARBOGAST & BERNS LLP**

20

21                                   By:  ___*/s/ David M. Arbogast*___
                                          David M. Arbogast, Esq.
                                          19510 Ventura Boulevard, Suite 200
22                                        Tarzana, California 91356
                                          Phone: (818) 961-2000
23                                        Fax:    (310) 861-1775

24                                        Paul R. Kiesel, Esq.
                                          Patrick Deblase, Esq.
25                                        Michael C. Eyerly, Esq.
                                          **KIESEL BOUCHER LARSON LLP**
26                                        8648 Wilshire Boulevard
                                          Beverly Hills, California 90210
27                                        Phone:  (310) 854-4444
                                          Fax:    (310) 854-0812
28    / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan Shub (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax      (215) 851-8029

Attorneys for Plaintiff ENEIDA AMPARAN and all
others Similarly Situated

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04498 - JF (PVTx)

**Exhibit No. 1**

.EE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN: 100109800000246596
MERS Phone: 1-888-679-6377

LOAN NO.:  07512004

# ADJUSTABLE RATE NOTE
(MTA - Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

| JANUARY 05, 2006 | CAMPBELL | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

2867 BRAHMS AVE, SAN JOSE, CA 95122-
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      472,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed   ONE HUNDRED FIFTEEN AND 000/1000THS   percent (115.000 %) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
PLAZA HOME MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.500      %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the      1st      day of      MARCH, 2006      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding      THREE AND 400/1000THS      percentage point(s) (      3.400      %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950      %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)

Page 1 of 5

10/04
LENDER SUPPORT SYSTEMS INC. FE5312XX.COU (01/05)

00001

3.    PAYMENTS
      (A) Time and Place of Payments
      I will make a payment every month.
      I will make my monthly payments on the _____ day of each month beginning on    MARCH, 2006    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    FEBRUARY 01, 2036    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

      I will make my monthly payments at    PLAZA HOME MORTGAGE, INC.
5090 SHOREHAM PLACE #109, SAN DIEGO, CA  92122
or at a different place if required by the Note Holder.

      (B) Amount of My Initial Monthly Payments
      Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    1,628.97
unless adjusted under Section 3 (F).

      (C) Payment Change Dates
      My monthly payment may change as required by Section 3(D) below beginning on the first day of    MARCH, 2007    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment
also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum
Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment
Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of
the interest due then negative amortization will occur.
      I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in  Section 3(F) or 3(G) below.

      (D) Calculation of Monthly Payment Changes
      At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me
to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also
have the option to pay the Full Payment for my monthly payment.

      (E) Additions to My Unpaid Principal
      Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of
the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

      (F) Limit on My Unpaid Principal; Increased Monthly Payment
      My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN AND 000/1000THS    percent
(115.000 %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

00002

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)    Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)    15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.    NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)                                        Page 3 of 5                                        10/04

00003

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)                          Page 4 of 5                          10/04

00004

shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ENEIDA AMPARAN            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                          -Borrower

00005

FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
(This is neither a contract nor a commitment to lend)

Creditor:
PLAZA HOME MORTGAGE, INC.

Borrower:
ENBDA AMPARAN

875 NORTH FIRST ST. #900
SAN JOSE, CA 95112

2687 BRAHMS AVENUE
SAN JOSE, CA 95122-

Date:    JANUARY 05, 2008
Check box if applicable:

Loan Number: 07512004

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | [ ] Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit including your down-payment of $ N/A |
| 7.136 % | $ 778,980.00 | $ 462,476.28 | $ 1,241,456.28 | $ N/A |

[ ]  REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.
PAYMENTS:  Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 12 | 1,628.97 | 03/01/2006 | | | | | | |
| 12 | 1,751.14 | 03/01/2007 | | | | | | |
| 12 | 1,882.48 | 03/01/2008 | | | | | | |
| 12 | 2,023.66 | 03/21/2009 | | | | | | |
| 12 | 2,175.44 | 03/01/2010 | | | | | | |
| 300 | 3,759.72 | 03/01/2011 | | | | | | |

THE PAYMENT SCHEDULE AND ANNUAL PERCENTAGE RATE DISCLOSED HERE ARE ESTIMATED ASSUMING THAT THE CURRENT INDEX RATE WILL NOT INCREASE NOR DECREASE THROUGHOUT THE LOAN TERM.

[ ]  DEMAND FEATURE:  This obligation has a demand feature.
[X]  VARIABLE RATE:  Your loan contains variable rate features.
   [ ]  Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.
   [X]  Information regarding the variable rate features of your loan are provided hereinafter.  The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate").  The rate that you will pay may not be changed more often than every ___ONE___MONTH___ commencing ___02/01/2006___.
     [ ]  Rate Change Limits:  The rate may not be changed by more than _____ % on any one Rate Change Date.
     [X]  The rate will never be greater than ___9.950___ %
     [ ]  Any increase in the rate will result in a corresponding increase in the payment.
     [X]  Rate increases may occur without immediate and/or corresponding payment increases.
     [X]  Unpaid interest will be added to the principal.
     The "Index" (or "Reference Rate") is the:
THE TWELVE MONTH AVERAGE OF THE MONTHLY YIELDS ON UNITED STATES TREASURY SECURITIES, ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR, AS MADE AVAILABLE BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

INSURANCE:  The following insurance is required to obtain credit:
[ ]  Credit life insurance and credit disability    [X]  Property insurance    [ ]  Flood insurance
You may obtain the insurance from anyone you want, that is acceptable to creditor.
[ ]  If you purchase [ ] property [ ] flood insurance from creditor you will pay $ _____ for one year term.
SECURITY:  You are giving a security interest in:
2687 BRAHMS AVE SAN JOSE, CA 95122-
[ ]  The goods or property being purchased    [X]  Real property you already own.
FILING FEES: $  85.00
LATE CHARGE:  If a payment is more than  15  days late, you will be charged  5.00  % of the Principal & Interest payment.
PREPAYMENT:  If you pay off early, you
[X]  may    [ ]  will not    have to pay a penalty.
[ ]  may    [X]  will not    be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
[ ]  may    [ ]  may, subject to conditions    [X]  may not    assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
[ ]  e means an estimate    [ ]  all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[X]  I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied.

_____    _____
ENBDA AMPARAN                Date

_____    _____
                            Date

_____    _____
                Date

_____    _____
                            Date

LENDER SUPPORT SYSTEMS, INC. GEN-001.GEN (07/04)

00006