1

**E-Filed 12/17/08**

2

3

4

5

6

7

8

9 IN THE UNITED STATES DISTRICT COURT

10 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 SAN JOSE DIVISION

12

13 ENEIDA AMPARAN, individually and on behalf of others similarly situated,

Case Number C 07-4498 JF (RS)

14

15                 Plaintiff,

**ORDER[1] GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE**

16         v.

17

18 PLAZA HOME MORTGAGE, INC.; WASHINGTON MUTUAL MORTGAGE SECURITIES CORP.,

19

20                 Defendants.

21

22      Plaintiff Eneida Amparan bring this putative class action for violations of the federal

23 Truth in Lending Act ("TILA"), as well as state-law claims for unfair business practices, breach

24 of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiff alleges

25 that Defendant Plaza Home Mortgage ("Defendant") failed to disclose important information

26

27

28     [1] This disposition is not designated for publication in the official reports.

1   about her residential mortgage in the clear and conspicuous manner required by law.[2]  Defendant

2   moves to dismiss the complaint for failure to state a claim upon which relief may be granted,

3   and to strike from the complaint requests for certain forms of relief.  For the reasons set forth

4   below, the motions will be granted in part and denied in part.

5                                    **I. BACKGROUND**

6        In January 2006, Plaintiff obtained an Option Adjustable Rate Mortgage ("Option

7   ARM") from Defendant.  The terms of the mortgage are contained in the Adjustable Rate Note

8   ("Note") executed by Plaintiff in connection with the loan.  A central feature of the loan is its

9   early interest rate adjustment.  While the interest rate on the loan is pegged to a variable index

10  and changes over time, the loan offered a low initial interest rate of 1.5%, which resulted in an

11  initial minimum monthly payment of $1,628.97.[3]  After one month, the interest rate increased

12  substantially from the low initial rate of 1.5% to the substantially higher index-based rate, which

13  was and continues to be calculated by adding a 3.4% "margin" to an indexed figure.

14        Despite the almost immediate rise in the applicable interest rate, Plaintiff's minimum

15  monthly payment remained level because the Note permits only one annual increase to the

16  minimum monthly payment.  In addition, the Note imposes a "payment cap" on the amount of

17  each such annual increase to the minimum monthly payment, limiting that increase to 7.5%.

18  However, if the loan's unpaid principal balance reaches 115% of its original value, the payment

19  cap no longer applies and the remaining principal is paid off in equal monthly payments over the

20  remaining term of the loan.  Because the initial monthly payment was based on a 1.5% interest

21  rate and did not rise with the actual interest rate that was charged, Plaintiff's mortgage began to

22  accrue interest each month in an amount greater than the amount of her monthly payment. The

23  remaining interest was added to the balance of unpaid principal and itself began accumulating

24  _____

25        [2] Plaintiff alleges that the subject loan was sold to Washington Mutual Mortgage

26  Securities Corporation.  On that basis, Plaintiff recently served Washington Mutual with her
    Second Amended Complaint.  Washington Mutual has not yet answered the complaint.

27        [3] This amount is equal to the monthly payment on a fully amortized thirty-year loan with

28  a 1.5% interest rate.

                                        2

1   interest.  Consequently, the principal balance has increased even as Plaintiff has made the

2   minimum monthly payment.  This situation is known as negative amortization, the result of

3   which is an ultimate reduction in the borrower's equity.

4          In connection with the loan transaction, Plaintiff received a federally mandated Truth in

5   Lending Disclosure Statement ("Statement") and a Loan Program Disclosure ("Disclosure")

6   with information specific to the loan she was considering.[4]  The Statement specifies that the

7   annual percentage rate ("APR") on the mortgage is 7.136%.  The Statement also includes a

8   schedule of estimated payments ("Payment Schedule") based in part on the initial 1.5% interest

9   rate and in part on the subsequent index-based rate.  The Payment Schedule lists an initial

10  minimum payment of $1,628.97 that increases by 7.5% on March 1 of each year.  In the fifth

11  year, the payment increases to $3,759.72, which apparently reflects the point at which the

12  principal balance exceeds 115% of its original value as a result of negative amortization, thus

13  overriding the payment cap.  The Payment Schedule assumes that Plaintiff will make only the

14  minimum monthly payment.

15         Plaintiff claims that the loan documents failed clearly and conspicuously to disclose the

16

17         [4] Plaintiff has attached the Statement to her complaint, and the Court properly may
18  consider it on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument
    that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Outdoor
19  Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) ("When ruling on a
    motion to dismiss, we may generally consider only allegations contained in the pleadings,
20  exhibits attached to the complaint, and matters properly subject to judicial notice.") (internal
    quotation marks omitted).  While Plaintiff did not attach the Disclosure, Defendant has attached
21  a copy to its motion to dismiss.  *See* Fontaine Decl., Ex. C.  Plaintiff acknowledges at the bottom
    of the Statement that she received the variable rate disclosure, and the Disclosure is an integral
22  part of the allegedly defective "loan documents."  *See* SAC, Ex. 1, at 6.  This document properly
    is considered as part of the complete set of documents involved in the loan transaction, the
23  existence and contents of which are alleged in the complaint.  *See In re Stac Elcs. Sec. Litig.*, 89
    F.3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents
24  are alleged in the complaint may be considered in connection with a motion to dismiss pursuant
    to Rule 12(b)(6)).  Defendant also has attached an amortization schedule that it claims to have
25  provided to Plaintiff as part of the loan transaction.  *See* Fontaine Decl., Ex. D.  Plaintiff disputes
26  whether she received this document, and accordingly the Court will not consider it in ruling on
    the instant motion.
27

28

                                          3

1   interest rate structure applicable to her loan and the consequent certainty that negative

2   amortization would occur if she made only the minimum payments.  On this basis, Plaintiff

3   alleges multiple violations of TILA's implementing regulations, contained in Title 12 of the

4   Code of Federal Regulations ("Regulation Z").  Specifically, she claims that Defendant violated

5   12 C.F.R. § 226.19 by failing adequately to disclose (1) the actual cost of her loan, as expressed

6   as an annual percentage rate ("APR"), (2) that the initial interest rate on the loan was

7   discounted, and (3) that negative amortization was certain to occur if Plaintiff followed the

8   Payment Schedule.  Plaintiff claims that Defendants violated 12 C.F.R. §§ 226.17 & 226.18 by

9   failing adequately to disclose: (1) the APR upon which the Payment Schedule was based, (2) the

10  effect of the payment cap, and (3) the composite APR.[5]  Plaintiff also alleges that Defendant

11  committed unlawful, unfair, and fraudulent business practices in violation of § 17200 of the

12  California Business and Professions Code, and committed fraud by failing adequately to make

13  the foregoing disclosures.  Finally, Plaintiff claims that Defendant, by failing to apply a low,

14  "fixed" interest rate for the first three to five years of the loan term, and by failing to apply each

15  payment to "principal and interest," breached both the express terms of the Note and the implied

16  covenant of good faith and fair dealing contained in every contract under California law.

17  **II. LEGAL STANDARD FOR MOTIONS TO DISMISS AND TO STRIKE**

18      A complaint may be dismissed for failure to state a claim upon which relief may be

19  granted for one of two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts

20  under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34

21  (9th Cir. 1984).  For purposes of a motion to dismiss, all allegations of material fact in the

22  complaint are taken as true and construed in the light most favorable to the nonmoving party.

23  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).   A complaint should not be

24  dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his

25  claim that would entitle him to relief."  *Clegg*, 18 F.3d at 754.  In addition, leave to amend must

26

27      [5] Plaintiff also claims more generally that Defendant failed adequately to disclose the
    actual "terms of the legal obligation between the parties."  As noted below, this claim is

28  duplicative of other, more specific claims and will be dismissed. *See infra* note 7.

4

1    be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.

2    *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). Conversely, dismissal may be

3    ordered with prejudice when amendment would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th

4    Cir. 1996).

5        Pursuant to Rule 12(f), a court may "order stricken from any pleading . . . any redundant,

6    immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While a motion to strike

7    "should be denied unless it can be shown that [the challenged matter] could have no possible

8    bearing on the issues in the litigation," *Buick v. World Savings Bank*, 565 F. Supp. 2d 1152,

9    1159 (E.D. Cal. 2008), such a motion may be used to strike requests for relief that is unavailable

10   as a matter of law. *See Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *Bureerong v.

11   Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

12                                    **III. DISCUSSION**

13   **A.    TILA Claims**

14       TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit."

15   15 U.S.C. § 1601(a). The statute is designed "to protect consumers' choice through full

16   disclosure and to guard against the divergent and at times fraudulent practices stemming from

17   uninformed use of credit." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). *See also

18   Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705 (9th Cir. 1986) ("Congress

19   designed [TILA] to apply to all consumers, who are inherently at a disadvantage in loan and

20   credit transactions."). Because the statute is remedial in nature, it is to be applied broadly in

21   favor of the consumer. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989); *see also

22   Plascencia v. Lending 1st Mortgage*, No. C 07-4485 CW, 2008 WL 1902698, *3 (N.D. Cal.

23   Apr. 28, 2008) ("TILA has been liberally construed in the Ninth Circuit.") (internal quotations

24   and citation omitted). Thus, even "[t]echnical or minor violations" of TILA or its implementing

25   regulations may impose liability on the creditor. *Semar*, 791 F.2d at 704 (noting also that "[t]o

26   insure that the consumer is protected . . . [TILA and its implementing regulations must] be

27   absolutely complied with and strictly enforced").

28       TILA focuses not only on the form of a disclosure but also on its accuracy. *See Rossman*

5

1    *v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390-91 (3d Cir. 2002) ("[T]he issuer must not

2    only disclose the required terms, it must do so accurately."). "The accuracy demanded excludes

3    not only literal falsities, but also misleading statements." *Id.* (citation omitted). In that respect,

4    the adequacy of TILA disclosures is to be assessed "from the standpoint of an ordinary

5    consumer, not the perspective of a Federal Reserve Board member, federal judge, or English

6    professor." *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 327-28 (7th Cir. 1999) (citation omitted).

7         TILA is implemented by the Federal Reserve Board of Governors ("FRB") through

8    regulations found in 12 C.F.R. § 226 and through the FRB's Official Staff Commentary

9    ("Commentary"). The Commentary is binding on all lenders, and compliance with it shields an

10   issuer from civil liability pursuant to TILA's safe-harbor provision. *See* 15 § U.S.C. 1640(f);

11   *see also* 12 C.F.R. Pt. 226, Supp. I-1 ("Good faith compliance with this commentary affords

12   protection from liability under 130(f) of the Truth in Lending Act").

13        **1. Statute of limitations**

14        Defendant argues that Plaintiff's TILA claims are barred by the applicable one-year

15   statute of limitations, which begins to run when the transaction underlying the alleged violation

16   is "consummated." *See King v. California*, 784 F.2d 910, 915 (9th Cir.1986); *see also* 15

17   U.S.C. § 1640(e). In the instant case, Plaintiff's TILA claims arose at the latest at the closing of

18   her mortgage transaction on January 5, 2006. SAC ¶ 2, Ex.1. Plaintiff did not file the instant

19   action until August 30, 2007, more than one year from the date she and Defendant consummated

20   the transaction. Thus, the one-year time limit of § 1640(e) has expired.

21        Nonetheless, the Ninth Circuit has held that TILA's remedial purpose authorizes

22   equitable tolling of the limitations period in appropriate circumstances. *King*, 784 F.2d at 915.

23   Such circumstances exist where "a reasonable plaintiff would not have known of the existence

24   of a possible claim within the limitations period." *Santa Maria v. Pac. Bell*, 202 F.3d 1170,

25   1178 (9th Cir. 2002). In such a case, the limitations period may be extended "until the borrower

26   discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the

27   basis of the TILA action." *King*, 784 F.2d at 915. "Generally, the applicability of equitable

28   tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule

6

1    12(b)(6) motion to dismiss . . . if equitable tolling is at issue." *Huynh v. Chase Manhattan*

2    *Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006).  A motion to dismiss on statute of limitations

3    grounds should be granted "only if the assertions of the complaint, read with the required

4    liberality, would not permit the plaintiff to prove that the statute was tolled." *Plascencia v.*

5    *Lending 1st Mortgage*, __ F. Supp. 2d __, 2008 WL 4544357, at *5 (N.D. Cal. Sept. 30, 2008)

6    (quoting *Durning v. First Boston Corp.*, 815 F.2d 1265, 1278 (9th Cir. 1987)); *Ford v. Wells*

7    *Fargo Home Mortg.*, No. 08-4276 SC, 2008 WL 5070687, at *4 -5 (N.D. Cal. Dec. 1, 2008)

8    (declining to grant motion to dismiss on statute of limitations grounds because "factual

9    allegations in the Complaint, construed in a light most favorable to Plaintiffs, might give rise to

10   tolling of the statute").

11          In the instant case, Plaintiff alleges that the loan documents did not clearly disclose that

12   Defendant intended to increase the interest rate applicable to Plaintiff's loan after only thirty

13   days.  SAC ¶ 30.  Plaintiff also alleges that the loan documents did not clearly disclose the

14   certainty that negative amortization would occur if Plaintiff followed the Payment Schedule

15   provided in the Statement.  SAC ¶ 31.  It is possible that a reasonable person in Plaintiff's

16   position would not have detected the negative amortization allegedly built into the loan within

17   the one-year limitations period.  As a result, the allegations in the complaint are sufficient to

18   raise questions about the reasonableness of Plaintiff's ignorance of her TILA claims until after

19   the expiration of the limitations period, and make dismissal of her TILA claims inappropriate on

20   a Rule 12(b)(6) motion.  Accordingly, the Court turns to the merits of the TILA claims.

21                    **2. Violations of 12 C.F.R. § 226.19**

22          Plaintiff claims that Defendant violated § 226.19 by failing clearly and conspicuously to

23   disclose (1) the actual cost of the loan, expressed as an annual percentage rate, (2) that the initial

24   interest rate offered on her loan was a discounted rate, and (3) that if she followed the Payment

25   Schedule provided in the Statement, negative amortization was certain to occur.  As an initial

26   matter, Defendant argues that the requirements of § 226.19 apply exclusively to the Disclosure,

27   and not to the Note, Statement, or any other document provided in connection with the loan

28   transaction.  *See* Def.'s Mot. to Dismiss, at 6:17-19 (arguing that "[s]ection 226.19 . . . is a

7

1    specific regulation that governs the disclosures required in the ARM Loan Program Disclosure

2    document," not those statements in the Note or Statement).  Defendant's reading is supported by

3    the regulations.  Section 226.19(b), which is entitled "Certain variable-rate transactions,"

4    requires "the following disclosures . . . [:] (1) The booklet titled Consumer Handbook on

5    Adjustable Rate Mortgages . . . [,] [and] (2) A *loan program disclosure* for each variable-rate

6    program in which the consumer expresses an interest."  12 C.F.R. § 226.19(b).  Each of the

7    requirements that Defendant is alleged to have violated is listed solely among the proper

8    contents of a "loan program disclosure."  *See* 12 C.F.R. § 226.19(b)(2)(v), (vii).

9        However, the relevant provisions of TILA are closely interrelated.  The Staff

10    Commentary to Regulation Z makes clear that no disclosure may cause another disclosure to be

11    obscured or made ambiguous.  *See* 12 C.F.R. Pt. 226, Supp. I, ¶ 17(a)(1)-1.  In addition, courts

12    have held that TILA prevents conflicting or inconsistent disclosures, including where the

13    inconsistency arises from statements in multiple documents.  *See, e.g.*, *Handy v. Anchor*

14    *Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (noting that where a lender provided a

15    borrower with both a correct and an incorrect disclosure, the disclosure was unclear in violation

16    of TILA); *Roberts v. Fleet Bank*, 342 F.3d 260, 267-68 (3d Cir. 2003) (holding that in

17    determining whether a required disclosure is clear, a court may consider other information that

18    the lender provided to the borrower); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1381

19    (11th Cir. 1984) (stating that description of loan terms in TILA disclosure statement that

20    conflicts with description of loan terms contained in note violates TILA).  Courts therefore have

21    applied the requirements of § 226.19 to loan documents beyond the actual Disclosure, such as

22    note agreements.  *See, e.g.*, *Plascencia*, 2008 WL 1902698, at *4-6 (denying motion to dismiss

23    § 226.19 claim predicated on alleged lack of clarity in note agreement with respect to disclosure

24    of APR and possibility of negative amortization); *Pham v. T.J. Fin., Inc.*, No. CV 08-275 ABC,

25    2008 WL 3485589, at *2 (C.D. Cal. Aug. 11, 2008) (denying motion to dismiss with respect to

26    claim for failure to disclose negative amortization because the "note suggests that negative

27    amortization was a 'possibility' . . . but Plaintiff alleges that, under the note, negative

28    amortization was certain to occur").  This Court adopts that approach.

8

**a. Failure to disclose the actual interest rate**

Plaintiff claims that Defendant violated § 226.19(b) by failing to disclose the true rate of her loan.  Section 226.19(b) requires lenders to disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carry-over."  12 C.F.R. § 226.19(b)(2)(vii).  Section 1638(a)(4) requires lenders to disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term."  15 U.S.C. § 1638(a)(4). TILA defines the term "APR" as the "cost of your credit as a yearly rate."  12 C.F.R. § 226.18(e).  Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."  Commentary, 12 C.F.R. Pt. 226.(17)(C)-6.  Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[]" of the APR.  *See also* 12 C.F.R. § 226.18(e).  The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous.  Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.

In the Statement that Plaintiff received in connection with her loan, Defendant represented that the APR was 7.136%, describing this figure as the "[t]he cost of your credit as a *yearly rate*." (emphasis added).  However, the Note itself states: "I will pay interest at a *yearly rate* of 1.500%."  Note ¶ 2(A) (emphasis added).  Plaintiff claims that this inconsistency renders the disclosure of the actual APR unclear and violates § 226.19.  The court in *Plascencia* permitted a similar claim, stating that

> [p]laintiffs may be able to show that the disclosure in Section 4, which sets forth the rules for calculating the interest rate on Plaintiffs' mortgage, is obscured by Section 2 on the previous page, which states that the interest rate is one percent. . . . While the Statement also discloses an APR of 7.68% . . . , Plaintiffs may be able to show that, considered as a whole, the disclosures provide confusing and seemingly contradictory information concerning the true interest rate of the loan.

*Plascencia*, 2008 WL 1902698, at *4; *see also Pham*, 2008 WL 3485589, at *4 (following *Plascencia* in holding that plaintiff had stated a claim based on failure clearly and conspicuously to disclose the APR).  Defendants rely on *Smith v. Anderson*, 801 F.2d 661 (4th Cir. 1986) for the

9

1  proposition that "confusion" caused by alleged discrepancies between the APR and rates listed in

2  a note does not give rise to a cognizable claim under TILA because "APR" is a term of art with a

3  meaning distinct from that of the term "interest rate." *See id*. at 663-64.  However, the court in

4  *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612, 618-19 (E.D. Wis. 2007), *reversed on other*

5  *grounds*, 545 F.3d 570 (7th Cir. 2008), distinguished *Smith* on facts nearly identical to those

6  present here.  In *Andrews*, the court noted that

> in its [Adjustable Rate Note], defendant stated that the 1.950 percent rate was a
> "yearly rate," the identical phrase that it used to define the APR.  Thus, in addition
> to stating that the cost of the loan as a yearly rate was 4.047 percent, defendant
> suggested that the cost of the loan as a yearly rate was 1.950 percent.  As
> previously indicated, however, the 1.950 percent rate was, in fact, a discounted or
> teaser rate, which applied only to the first monthly payment.

*Id*.  The court observed that where, as in *Smith*, "the interest rate and the APR are merely

different ways of calculating the cost of a loan as a yearly rate, disclosure of the interest rate

might not confuse an ordinary consumer." *Id*. n.3 (citing *Smith*, 801 F.2d at 663-64).  However,

the court continued that this was not the case where "the 1.950 percent figure was a teaser rate

and not the interest rate on the loan."  *Id*.  Similarly, this Court concludes that Plaintiff has stated

a claim for failure clearly and conspicuously to disclose the true cost of the loan.

### b. Failure to disclose that the initial interest rate was discounted

Plaintiff claims that Defendant violated § 226.19(b)(2)(v) by failing to disclose that the

initial interest rate offered on Plaintiff's loan was a discounted rate.  SAC ¶¶ 100-106.  A

"discounted" rate is one "that is not determined by the index or formula used to make later

interest rate adjustments." 12 C.F.R. Pt. 226, Supp. I, ¶ 19(b)(2)(v)-1.  "If the initial interest rate

will be a discount or a premium rate, creditors must alert the consumer to this fact."  *Id*.  Such a

disclosure must be "clear[] and conspicuous[]."  12 C.F.R. § 266.17(a)(1).

Defendant argues that Plaintiff ignores statements in the Disclosure, which purportedly

complies with § 226.19.  Defendant points out that the Commentary provides specific examples

of statements that comply with the disclosure requirement, such as "Your initial interest rate is

not based on the index used to make later adjustments . . . . Ask us for the amount our adjustable

rate mortgages are currently discounted," and that Defendant's representation in the Disclosure is

10

1   virtually identical.  *See* Def.'s Mot. at 7:11-24.  While this may be true, Plaintiff still may be able

2   to show that Defendant's disclosures, taken as a whole, obscured the nature of the discount.

3   Section 2(A) of the Note states: "I will pay interest at a yearly rate of 1.500%.  The interest rate I

4   will pay *may* change." *Id*. (emphasis added).  Section 2(B) then states that "[t]he interest rate I

5   will pay *may* change on the 1st day of March 2006, and on that day every month thereafter." *Id*.

6   (emphasis added).  Finally, § 3(C) states that "[m]y monthly payment may change . . . on the first

7   day of March 2007 and on that day every 12th month thereafter."  Based on these statements, the

8   Court concludes that Plaintiff may be able to show that she was not informed in clear and

9   conspicuous terms that the initial one-and-one-half percent interest rate disclosed in the Note was

10  a discounted rate.  Accordingly, Defendant's motion will be denied with respect to this claim.

11                  **c. Failure to disclose that negative amortization was certain to occur**

12          Plaintiff alleges that Defendant violated § 226.19(b)(2)(vii) by failing to disclose that

13  negative amortization was certain to occur if she made only the minimum payments shown in the

14  Payment Schedule.  As already noted, Section 226.19 requires that a lender disclose "[a]ny rules

15  relating to changes in the index, interest rate, payment limitations, negative amortization, and

16  interest rate carryover."  12 C.F.R. § 226.19(b)(2)(vii).  In addition, with respect to variable-rate

17  loans with payment caps, such as Plaintiff's loan, the Commentary states that "[i]f a consumer is

18  given the option to cap monthly payments that may result in negative amortization, the creditor

19  *must* fully disclose the rules relating to the option, including the effects of exercising the option

20  (*such as negative amortization will occur and the principal loan balance will increase*)."  12

21  C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

22          With respect to negative amortization, the Note executed by Plaintiff states that "[i]f the

23  Minimum Payment is not sufficient to cover the amount of the interest due then negative

24  amortization will occur."  Note ¶ 3(C).  The Note also states that "my Minimum Payment could

25  be less than or greater than the amount of the interest portion of the monthly payment that would

26  be sufficient to repay the unpaid Principal I owe."  Note ¶ 3(D).  The core of Plaintiff's argument

27  is that the minimum payment *necessarily* was insufficient to pay the monthly interest on the loan,

28  making negative amortization a certainty if Plaintiff made only the minimum payment.

                                                    11

1    A number of courts have recognized the viability of claims for failure clearly and

2    conspicuously to disclose the certainty of negative amortization. *See, e.g.*, *Mincey v. World*

3    *Savings Bank*, FSB, __ F. Supp. 2d __, No. 2008 WL 3845438, at *23-24 (D.S.C. Aug. 15, 2008)

4    ("The problem with [defendant's] argument is that it [asserts] the TILA allows it to disclose

5    something that is false: that negative amortization is merely a possibility when in fact it is a

6    certainty.  The court concludes that disclosing the possibility of negative amortization is

7    misleading when the reality is that it will occur."); *Plascencia v. Lending 1st Mortgage*, No. C

8    07-4485 CW, 2008 WL 1902698, at *5-6 (N.D. Cal. Apr. 28, 2008) (noting same); *Mandrigues v.*

9    *World Savs., Inc.*, No. C 07-04497 JF, 2008 WL 1701948, at* (N.D. Cal. Apr. 9, 2008) (same);

10   *Pham*, 2008 WL 3485589, at *2 (same); *see also Monaco v. Bear Stearns Res. Mortgage*, 554 F.

11   Supp. 2d 1034, 1042 n.11 (C.D. Cal. 2008) (noting that the borrower was "warned that the Note

12   'may require'–as opposed to, more accurately, 'will require'–unpaid interest to be added to loan

13   principal," precluding dismissal of § 226.19(b) claim); *Avila v. Stearns Lending, Inc.*, No. CV 08-

14   0419-AG, 2008 WL 1378231 (C.D. Cal. April 7, 2008) (granting preliminary injunction because

15   Plaintiff was likely to succeed in showing, inter alia, that Defendants' "failure to disclose that the

16   payment cap associated with the Option ARM loan sold to Plaintiffs would certainly cause

17   negative amortization to occur" in violation of 12 C.F.R. § 226.19").

18   In *Plascencia*, for example, the court considered whether note provisions very similar to

19   those at issue here failed adequately to disclose that negative amortization was certain to occur.

20   The court concluded that "[w]hile the note does set out the rules by which negative amortization

21   may occur, it refers to negative amortization only as a possibility . . . .  Yet under any conceivable

22   index value, it was clear at the time the disclosures were provided that Plaintiff's initial minimum

23   monthly payment would not be sufficient to cover interest.  Thus, negative amortization was a

24   certainty if Plaintiffs followed the Payment Schedule listed in the Statement."  *Plascencia*, 2008

25   WL 1902698, at *6.

26   In the instant case, Plaintiff's interest rate under the loan is calculated by adding the

27   3.4% margin to the Index rate.  Thus, Plaintiff's rate will never be lower than 3.4% after the

28   thirty-day interest rate adjustment.  As in *Plascencia*, there was never a possibility that the

1   payments listed on the Payment Schedule would cover all of the interest at the rate required to

2   repay the loan.  Accordingly, Plaintiff may be able to show that the certainty of negative

3   amortization during the first year of the loan, based on the Payment Schedule, rendered

4   Defendant's disclosures incomplete or misleading.[6]

5       Defendant argues that irrespective of what the Note stated, the explanation of negative

6   amortization provided in the Disclosure was accurate.  The Disclosure contains the following

7   language:

8       Beginning with the 13th payment and every 12 months thereafter, we will
        calculate the amount of the monthly payment that would be sufficient to repay the
9       unpaid principal balance in full by the maturity date in substantially equal
        payments at the interest rate in effect during the month preceding the payment
10      change date.  This payment is called the "Full Payment."  Except as otherwise
        provided, your "Limited Payment" will be the payment amount for the month
11      preceding the payment change date increased by no more than 7.5% ("Payment
        Cap").  Your new "Minimum Payment" will be the lesser of the Limited Payment
12      and the Full Payment.  You also have the option to pay the Full Payment for your
        monthly payment.  *If you pay less than the Full Payment, then the payment may
13      not be enough to cover the interest due, and any difference will be added to your
        principal balance.  This means the balance of your loan could increase.  This is
14      known as "negative amortization."*  During the loan term, we may provide you
        with other monthly payment options that are greater than the Minimum Payment
15      ("Payment Options").  Please ask us about these Payment Options.

16  Fontaine Decl., Ex. C, p. 1 (emphasis added).  The Court agrees with Defendant that this

17  statement, viewed independently, provides a technically accurate description of the effect of the

18  minimum payment on the likelihood of negative amortization.  However, the fact that Defendant

19  may have provided a technically accurate disclosure does not excuse the potentially inadequate

20  or misleading character of other disclosures it provided or lessen the resulting potential for

21  confusion.  Because all of the information provided to Plaintiff must be considered in assessing

22  whether the disclosures were clear, conspicuous, and complete, *see, e.g.*, *Handy v. Anchor*

23  *Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260,

24  267-68 (3d Cir. 2003); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1381 (11th Cir.

25

26      [6] Defendant relies on *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612 (E.D. Wis.
27  2007) to establish the adequacy of its disclosures, but as the *Mincey* Court explained, the
    minimum monthly payments in *Andrews* did not guarantee negative amortization.  *See Mincey*,
28  2008 WL 3845438, at *22-23.

Case No. C 07-4498 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, ETC.
(JFLC3)

1   1984), Plaintiff may be able to show that the combination of disclosures was incomplete or

2   misleading despite the technically accurate representation concerning negative amortization

3   contained in the Disclosure.

4   **3. Violations of 12 C.F.R. §§ 226.17 & 226.18**

5   **a. Failure to disclose the interest rate underlying the Payment Schedule**

6   Plaintiff claims that the amounts listed in the Payment Schedule were based not on the

7   disclosed composite APR listed on the Statement but on the 1.5% interest rate listed in the Note

8   that applied for only thirty days.  SAC ¶ 71.  Defendant argues that the Payment Schedule

9   complied with TILA because it "identifies the number, amount, and period of payments

10  scheduled to repay the total loan payments."  Def.'s Mot. at 14:1-2.  However, § 226.17, which

11  governs the form and content of disclosures including the Payment Schedule, states that "[t]he

12  disclosures shall reflect the terms of the legal obligation between the parties," 12 C.F.R. §

13  226.17(c)(1), meaning "the credit terms to which the parties are legally bound as of the outset of

14  the transaction," Commentary, 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-1.  "The legal obligation

15  normally is presumed to be contained in the note or contract that evidences the agreement."  12

16  C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-2 .  More specifically, "[t]he Payment Schedule should reflect

17  all components of the finance charge," *id.* ¶ 18(g)-1, and "in a variable rate transaction with . . .

18  a discounted or premium rate, *disclosure should not be based solely on the initial terms*," *id.* ¶

19  17(c)(1)-8 (emphasis added).  Plaintiff adequately has alleged that the Statement, which contains

20  a Payment Schedule basing several years of payments on the initial low interest rate, does not

21  reflect clearly the legal obligation evidenced by the Note.  Accordingly, the Court declines to

22  dismiss this claim.[7]

23

24  [7] To the extent that Plaintiff alleges more generally that the Note failed to disclose her

25  true legal obligations, that allegation appears to "rest on the identical facts Plaintiff has already

26  alleged under more specific provisions of TILA, such as certain negative amortization and

27  confusing and conflicting statements on the interest rate. This claim is cumulative of Plaintiff's
    other claims, and it is DISMISSED."  *Pham v. T.J. Fin., Inc.*, No. CV 08-275 ABC, 2008 WL
    3485589, at *3 (C.D. Cal. Aug. 11, 2008) (citing *Plascencia*, 2008 WL 1902698, at *7).

28

14

1

**b. Failure to disclose the effect of the payment cap**

2

Plaintiff alleges that Defendant failed clearly and conspicuously to disclose that the

3

payment cap included in the Note "would cause hundreds, if not thousands[,] of dollars, each

4

month, to be secretly added to principal." SAC ¶¶ 110-11. The Commentary to 12 C.F.R. §

5

226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial

6

rate or payment, at the time of the first adjustment, from changing to the rate determined by the

7

index or formula at consummation, the effect of that rate or payment cap should be reflected in

8

the disclosures." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-10(iii). ¶ 19(b)(2)(vii)-2. Defendant

9

argues that the Payment Schedule in the Statement "reflects" the effect of the payment cap by

10

providing payment amounts calculated based on (1) the payment cap and (2) the override of the

11

payment cap when the unpaid principal balance reaches 115% of the original principal amount

12

owed.

13

The Court agrees that Plaintiff has failed to state a claim on the basis of incomplete

14

disclosure of the effect of the payment cap. As in *Pham*, the Statement

15

16

17

18

19

> sets out the Payment Schedule, beginning with [the monthly payment] for the
> first year, and then four annual increases of the 7.5% payment cap. Once the
> principal reaches 115% of the original loan, the payment jumps to [$3,759.72].
> The total finance charge ($[778,980]) and the total amount of payments
> ($[1,241,458.28]) are disclosed on the Statement, and, as the court in *Plascencia*
> held, this adequately discloses 'the effect of the payment cap on the true cost of
> the loan, in that [the Statement] accurately state[s] the cost of the loan based on
> the Payment Schedule listed.' To the extent Plaintiff bases this claim on her
> allegations that Defendant failed to disclose that negative amortization was
> certain to occur, it is duplicative and unnecessary.

20

21

*Pham v. T.J. Fin., Inc.*, No. CV 08-275 ABC, 2008 WL 3485589, at *3 (C.D. Cal. Aug. 11,

22

2008) (citing *Plascencia*, 2008 WL 1902698, at *8). For the same reasons, the Court will

dismiss this claim.

23

24

**c. Failure to disclose the composite APR**

25

Plaintiff claims that Defendant violated § 226.17(c) by failing to disclose the composite

26

rate applicable to her loan in the Note. Plaintiff bases this claim on the Commentary to §

27

226.17(c)(1), which, as discussed previously, requires that the APR "reflect the terms of the

28

legal obligation between the parties." The Commentary states that "in a variable-rate transaction

15

1   with a . . . discounted or premium rate, disclosures should not be based solely on the initial

2   terms.  In those transactions, the disclosed annual percentage rate should be a composite rate

3   based on the rate in effect during the initial period and the rate that is the basis of the variable-

4   rate feature for the remainder of the term."  12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)(8) (emphasis

5   added).

6          However, as the *Plascencia* court held in rejecting a claim identical to that asserted by

7   Plaintiff in the instant case, the rule "simply requires that the APR, which appears only on the

8   [Statement], be a composite rate rather than the . . . initial interest rate."  *Plascencia*, 2008 WL

9   1902698, at *7.  As in *Plascencia,* the APR listed on Plaintiff's Statement is a composite rate–"a

10  weighted average of the brief . . . 'teaser' rate and the permanent, higher indexed rate–based on

11  the value of the Index at the time the statement was produced."  *Id.*  Finally, "to the extent that

12  Plaintiff[] assert[s] that the composite rate should have been disclosed in the Note in addition to

13  the [Statement], [Plaintiff has] provided no provision imposing such a requirement.  Further,

14  such a claim is essentially identical to [the] claim . . . that the Note failed to disclose the true

15  interest rate."  *Id*. n.8.  For these reasons, this claim will be dismissed.

16  **B.    UCL Claims**

17         California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, prohibits any

18  "unlawful, unfair or fraudulent business practices."  *See also Cel-Tech Commc'ns, Inc. v Los*

19  *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the statute is written in the

20  disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3)

21  fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Plaintiff

22  alleges violations of each prong of the UCL.  Defendant argues that Plaintiff's UCL claims are

23  preempted to the extent that they are based on TILA, and that the claims are barred

24  independently because they would hold Defendant liable for conduct authorized by TILA.

25         With respect to Defendant's preemption argument, TILA's preemption provision states

26  the following:

27         Except as provided in subsection (e) of this section, this part and parts B and C of
           this subchapter do not annul, alter, or affect the laws of any State *relating to the*

28         *disclosure of information in connection with credit transactions, except to the*

16

1

2

> *extent that those laws are inconsistent with the provisions of this subchapter and*
> *then only to the extent of the inconsistency.*

15 U.S.C. § 1610(a)(1) (emphasis added).  Citing *Nava v. Virtualbank*, No. 08-069, 2008 WL

2873406 (E.D. Cal. July 16, 2008), Defendant argues that Plaintiff is attempting impermissibly

to "supplement" TILA using the UCL.  The court in *Nava* did hold that UCL claims are

preempted because Congress has "occupied the field" of lending disclosure regulation.  *Id*. at *7.

However, there is a split of authority in this regard.  In *Plascencia*, for example, the court found

that UCL claims premised on TILA violations are not necessarily preempted because "[t]he

UCL does not, on its face, relate to the disclosure of information in connection with credit

transactions, let alone impose disclosure requirements that are different than TILA's in any

way."  *Plascencia v. Lending 1st Mortgage*, __ F. Supp. 2d __, 2008 WL 4544357, at *7 (N.D.

Cal. 2008) ("*Plascencia II*").  With respect to the UCL's four-year statute of limitations, which

exceeds TILA's one-year limitations period, the court explained that

> the fact that the UCL allows a claim to be brought within four years or may
> provide remedies not available under TILA . . . . simply provides an additional
> level of protection for consumers.  The UCL does not mandate disclosures that are
> substantively inconsistent with TILA's, and therefore does not bring the UCL
> within the scope of TILA's preemption provision.

*Id*. (citing *In re First Alliance Mortgage Co.*, 280 B.R. 246, 250-51 (C.D. Cal. 2002), for the

proposition that "[a]dditional penalties are not inconsistent with TILA, but merely provide

greater protection to consumers").  This Court has applied reasoning similar to that in

*Plascencia II* with respect to the preemption of UCL claims under the Home Owners Loan Act,

12 U.S.C. § 1461 *et seq.*, *see Mandrigues v. World Savings, Inc.*, No. C 07-04497, 2008 WL

1701948, at *3 (N.D. Cal. April 9, 2008), and follows *Plascencia II* in holding that TILA does

not necessarily preempt Plaintiff's UCL claims.

 Defendant also claims that it cannot be held liable under the UCL for disclosures that

comply with TILA.  In *Rubio v. Capital One Bank*, CV 07-6766, 2008 WL 3863878 (C.D. Cal.

Aug. 11, 2008), the court rejected a challenge to certain lending disclosures under TILA.  Based

on its conclusion that the disclosures were adequate, the court concluded that all UCL violations

premised on those alleged violations were barred because conduct specifically authorized by law

17

1  cannot be unlawful, unfair, or fraudulent. *Id*. at *10.  While the Court agrees with this

2  proposition, it does not agree that all of Defendant's disclosures necessarily complied with

3  TILA.  Accordingly, the Court will dismiss Plaintiff's UCL claims only to the extent that they

4  are predicated on conduct that the Court has found lawful under TILA.

5  **C.    Fraudulent Concealment**

6         To state a claim for fraudulent concealment, a plaintiff must allege (1) concealment or

7  suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent

8  to defraud; (4) actual, justifiable reliance; and (5) resulting damages. *Blickman Turkus, LP v.*

9  *MF Downtown Sunnyvale*, LLC, 162 Cal. App. 4th 858, 868 (2008) (citing *Marketing West, Inc.*

10  *v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992)).  In the instant case,

11  Plaintiff's fraud claim is premised on the same allegedly inadequate disclosures that form the

12  basis of her TILA claims.  Defendant argues that it cannot be held liable for fraudulent

13  concealment because (1) it owed Plaintiff no duty to disclose, and (2) even if it owed such a

14  duty, "[t]here can be no fraudulent omissions where the alleged material facts were not

15  suppressed, but rather were actually disclosed in the loan documents plaintiffs received." *See*

16  Def.'s Mot. at 22:1-23:4.

17         A duty to disclose may be imposed by statute. *See, e.g.*, *Lovejoy v. AT&T Corp.*, 119

18  Cal. App. 4th 151, 158 (2004) (holding that disclosure provisions of California Public Utilities

19  Code created a duty to disclose for fraudulent concealment purposes).  The court in *Plascencia*

20  *II* recently held that TILA imposes a duty of disclosure capable of supporting an action for

21  fraudulent concealment. *Plascencia II*, __ F. Supp. 2d __, 2008 WL 4544357, at *8.  With

22  respect to Defendant's argument that the fraudulent concealment claim fails because all of the

23  material loan terms were disclosed in some manner in the loan documents, it bears emphasis that

24  "[c]oncealment is a term of art." *Lovejoy*, 119 Cal. App. 4th at 158.  When a statute "defines the

25  duty of disclosure, its requirements inform [the] analysis of whether there was concealment or

26  suppression of a material fact." *Id*. at 159.  Thus, as with the disclosure provision at issue in

27  *Lovejoy*, "[t]he issue is not . . . simply whether there was a disclosure.  Rather, the issue is

28  whether there was a disclosure consistent with the duty to disclose." *Id*.  As in *Lovejoy*, the

18

1   gravamen of Plaintiff's allegations in the instant case is that Defendant failed to disclose

2   relevant information in the *manner* required by TILA, rendering the disclosures that were made

3   incomplete or deceptive.   At least in the context of a motion to dismiss, Plaintiff's allegations

4   are sufficient to state a claim for fraudulent concealment.

5   **C. Contract Claims**

6       **1. Breach of contract**

7          Plaintiff asserts that Defendant breached the Note by (1) charging more than the 1.5%

8   interest rate for the first three to five years of the loan, and (2) failing to apply any portion of

9   Plaintiff's monthly payments towards her principal balance.   Plaintiff has failed to state a claim

10  on either ground for several obvious reasons.   At the heading of the Note, there appears in all

11  capital letters the admonition that "THIS NOTE CONTAINS PROVISIONS THAT WILL

12  CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT."   Paragraphs 1(C) and

13  1(D) explain that the interest rate is based on an Index.   Those provisions also explain how the

14  Index is calculated and the effect of the margin.   While the Court has held that Defendant's

15  disclosures with respect to the interest rate may have been less than clear and conspicuous as

16  required by TILA, Plaintiff's claim that Defendant breached the Note by failing to apply a fixed

17  interest rate is contradicted by the terms of the Note itself.

18        With respect to whether Defendant breached the Note by failing to apply Plaintiff's

19  payments to her principal balance, the court in *Plascencia II* rejected an identical claim, stating

20  that

21        [a]lthough the Court has held that Plaintiffs may be able to show that, considered

      as a whole, the disclosures provide confusing and seemingly contradictory

22        information concerning the terms of the loan, the disclosures nonetheless

      accurately describe the relationship between the minimum monthly payment and

23        the accrued interest.

24  *Plascencia II*, __ F. Supp. 2d __, 2008 WL 4544357, at *9.   As in *Plascencia II*, the Note at

25  issue here states that each monthly payment "will be applied to interest before Principal."   Note

26  ¶ 3(A).   Elsewhere, the Note states that "[t]he 'Minimum Payment' is the minimum amount the

27  Note Holder will accept for my monthly payment . . . .   If the Minimum Payment is not

28  sufficient to cover the amount of the interest due then negative amortization will occur."   Note ¶

19

3(C).  The Note also provided Plaintiff will additional payment options in order to avoid

negative amortization.  *See* Note ¶ 3(H).  As in *Plascencia II*, Plaintiff in the instant case does

"not allege that she actually made payments that were greater than the amount of accrued

interest, and that [Defendant] nonetheless failed to apply the payments to principal.  If this were

the case, [Plaintiff] would have stated a breach of contract claim.  As the complaint stands now,

[she] ha[s] not."  *Plascencia II*, __ F. Supp. 2d __, 2008 WL 4544357, at *8.

In the instant case, because (1) "[t]he express terms of the Note . . . directly contradict

[P]laintiff's allegation that [D]efendant[] [was] obligated to apply a fixed interest rate . . . for the

first three to five years of the loan," *Quezada v. Loan Center of California, Inc.*, No. CIV.

08-177 WBS, 2008 WL 5100241, at *7 (E.D. Cal. Nov. 26, 2008), and (2) "the Note "contains

no promise, express or implied, that Plaintiff's payment would always be applied to both

principal and interest," *Plascencia II*, __ F. Supp. 2d __, 2008 WL 4544357, at *9, Plaintiff's

breach of contract claims will be dismissed.  *See also Quezada*, 2008 WL 5100241, at *7-8

(reaching same conclusion with respect to identical claims for failure to apply fixed interest rate

and to apply monthly payments to principal).

**2. Tortious breach of the covenant of good faith and fair dealing**

"Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and its enforcement."  *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir.

1999) (*quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371

(1992)). That duty, known as the covenant of good faith and fair dealing, requires "that neither

party . . . do anything which will injure the right of the other to receive the benefits of the

agreement."  *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589 (2005) (citation

omitted).  However, the covenant "is available only in limited circumstances, generally

involving a special relationship between the contracting parties, such as the relationship between

an insured and its insurer."  *Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370 (1999).

Courts have "reject[ed] [the] argument that [the covenant] . . . should encompass normal

commercial banking transactions."  *Mitsui Mfrs. Bank v. Super. Ct.*, 212 Cal. App. 3d 726, 729

(1989).  Moreover, "the implied covenant is a supplement to an existing contract, and thus it

20

1   does not require parties to negotiate in good faith *prior* to any agreement." *McClain v. Octagon*

2   *Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008) (emphasis added).

3          Plaintiff's claim that Defendant breached the covenant is defective in several respects.

4   Plaintiff has not alleged–and there appears to be no basis upon which Plaintiff could allege–that

5   the type of special relationship required to invoke the covenant existed between herself and

6   Defendant.  Indeed, "[a] debt is not a trust and there is not a fiduciary relation between debtor

7   and creditor as such." *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989).  In

8   addition, "[t]o the extent that [P]laintiff's claim is based on [D]efendant['s] participation in the

9   marketing, promotion, or distribution of her loan before consummation, the implied covenant of

10  good faith and fair dealing is inapplicable." *Quezada*, 2008 WL 5100241, at *9 (citing

11  *McClain*, 159 Cal. App. 4th at 799).  The remaining allegations underlying Plaintiff's

12  claim–concerning Defendant's alleged failure to apply a fixed interest rate and to apply monthly

13  payments to the principal balance–are identical to those underlying her insufficient breach-of-

14  contract claim.  "Although adherence to the terms of a contract does not insulate a party against

15  a claim of breach of the implied covenant of good faith and fair dealing, compliance with

16  contractual terms cannot serve as the very basis for such a claim." *Quezada*, 2008 WL 5100241,

17  at *9 (citing *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) and *Racine &*

18  *Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1032 (1992)).  Accordingly,

19  Plaintiff's claim for breach of the covenant of good faith and fair dealing will be dismissed.

20  **D. Motion to Strike**

21         Plaintiff seeks to rescind her loan agreement with Defendant and ultimately to certify a

22  class of similarly situated individuals with the goal of obtaining class-wide rescission.

23  Defendant argues that rescission on a class-wide basis is unavailable as a matter of law, and that

24  rescission of Plaintiff's loan may not be ordered as a remedy against Defendant because the loan

25  has been sold to another financial institution.  While the Court agrees with Defendant that

26  rescission is unavailable on a class-wide basis, several factors preclude it from striking

27  Plaintiff's request for rescission on an individual basis at this stage in the proceedings.

28         Courts are in uniform agreement that rescission may not be sought on a class-wide basis.

21

1   *See Andrews v. Chevy Case Bank*, __ F.3d __, 2008 WL 4330761, at *4-6 (7th Cir. Sept. 24,

2   2008) (holding that "the rescission remedy prescribed by TILA is procedurally and substantively

3   incompatible with the class-action device" and "may not be pursued on a class basis");

4   *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007); *James v. Home*

5   *Constr. Co. of Mobil, Inc.*, 621 F.2d 727 (5th Cir. 1980) (same)*; Gibbons v. Interbank Funding*

6   *Group*, 208 F.R.D. 278, 284 (N.D. Cal. 2002) (same).  The remedy of rescission provided in 15

7   U.S.C. § 1635(b) is a personal remedy that involves individual questions of fact, making

8   rescission inappropriate for class-wide adjudication.  *See Gibbons*, 208 F.R.D. at 285; *see also*

9   *James*, 621 F.2d at 730.  "The highly individualized character of [the rescission] process and the

10  range of variations that may occur render rescission largely incompatible with the sensible

11  deployment of the class-action mechanism."  *McKenna*, 475 F.3d at 424.

12      With respect to whether Plaintiff herself may seek rescission, Defendant correctly cites

13  the Ninth Circuit's holding in *King v. California* that a borrower may not rescind a loan under

14  TILA where the borrower has refinanced the loan, such that the underlying deed of trust has

15  been "superseded."  784 F.2d 910, 913 (9th Cir.1986).  In the instant case, the complaint alleges

16  that Plaintiff's loan has been sold to Washington Mutual, and that Washington Mutual

17  purchased or otherwise is an assignee of the loan.  SAC ¶ 4.  The pleadings thus appear to

18  establish that Defendant has no possession or control over the loan nor any security interest in

19  the property securing the loan.

20      Nonetheless, the precise relationship between defendants Plaza Home Mortgage and

21  Washington Mutual with respect to the loan remains unclear, and that lack of clarity prevents

22  the Court from striking the request for rescission as to Defendant at this stage in the

23  proceedings.  Moreover, 15 U.S.C. § 1635(b) requires that upon rescission, "a creditor must

24  return to a borrower any money or property given it by the borrower."  *Avila v. Stearns Lending,*

25  *Inc.*, No. 08-0419, 2008 WL 1378231, at *2 (C.D. Cal. Apr. 7, 2008).  Thus, distinct from any

26  statutory damages under TILA, rescission of Plaintiff's loan might require that Defendant return

27  to Plaintiff any money it received from her.  Accordingly, the Court declines to strike the request

28  for rescission at this time.

1

### III. CONCLUSION

2      For the foregoing reasons, Defendant's motion to dismiss will be denied with respect to

3  Plaintiff's claims pursuant to 12 C.F.R. § 226.19, her claim for failure to disclose the interest

4  rate underlying the Payment Schedule pursuant to §§ 226.17 & 18, and her claims for fraudulent

5  concealment and violations of the UCL, as limited by the Court's holdings under TILA.[8]

6  Defendant's motion will be granted with respect to all other claims.  Because the Court

7  dismisses each of these claims as fundamentally inconsistent with the terms of the loan

8  documents, dismissal is without leave to amend.[9]  With respect to Defendant's motion to strike,

9  it is clear that Plaintiff may not seek class-wide rescission as a matter of law, and the motion

10 will be granted as to Plaintiff's request for such relief.  However, because there is at least a

11 possibility that Defendant would be a proper party to rescission of Plaintiff's individual loan, the

12 motion to strike will be denied with respect to Plaintiff's request for rescission on an individual

13 basis.

14

15 **IT IS SO ORDERED**

16

17 DATED: 12/17/08

18                                                    JEREMY FOGEL
                                                      United States District Judge
19

20 ─────────────────────

21      [8] As noted above, only those UCL claims predicated upon conduct that the Court has *not*
   found lawful under TILA will be allowed to proceed.  As also noted above, limited aspects of
22 these claims will be dismissed as duplicative of other, more specific alleged violations of TILA.

23      [9] In assessing whether Plaintiff should be given leave to amend, the Court ordinarily must

24 consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to
   cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility
25 of the proposed amendment."  *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir.
   2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)); *see*
26 *also Foman v. Davis*, 371 U.S. 178, 182 (1962) (providing factors constraining district court's
   discretion to deny leave to amend).  These factors, however, are "not given equal weight . . . ,
27 [and] futility of amendment can, by itself, justify the denial of a motion for leave to amend."
   *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

28

Case No. C 07-4498 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, ETC.
(JFLC3)

1   This order has been served upon the following persons:

2   David M. Arbogast darbogast@law111.com, jkerr@law111.com

3   Deborah E Barack dbarack@stroock.com, lacalendaring@stroock.com

4   Jeffrey K Berns jberns@law111.com, staff@jeffbernslaw.com

5   John Dominic Alessio jda@procopio.com, abr@procopio.com, laj@procopio.com

6   Jonathan Shub jshub@seegerweiss.com, atorres@seegerweiss.com

7   Lee A. Weiss lweiss@dreierllp.com

8   Michael C Eyerly eyerly@kbla.com

9   Patrick DeBlase deblase@kbla.com

10  Paul R. Kiesel Kiesel@kbla.com, cgarcia@kbla.com

11  Rebecca Tingey rtingey@dreierllp.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28