**E-Filed 9/23/2010**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ENEIDA AMPARAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAZA HOME MORTGAGE, INC., et al.,<br><br>Defendants. | Case Number 5:07-cv-04498-JF/PVT<br><br>ORDER[1] DENYING MOTION TO TRANSFER; GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, WITH LEAVE TO AMEND; AND OVERRULING OBJECTIONS TO JOINDERS<br><br>[re: doc. nos. 140, 141, 146, 149 ] |

Before the Court are the following motions: (1) a motion to transfer venue to the Central District of California filed by Defendant Plaza Home Mortgage, Inc. ("Plaza") ; (2) a motion to dismiss filed by Defendants Countrywide Bank, FSB and Countrywide Home Loans, Inc. (collectively, "Countrywide"); and (3) a motion to dismiss filed by Defendants Washington Mutual Mortgage Securities Corporation and WAMU Asset Acceptance Corporation (collectively "WAMU"). Plaza joins in both motions to dismiss; Plaintiffs object to the joinders.

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:07-cv-04498-JF/PVT
ORDER DENYING MOTION TO TRANSFER ETC.
(JFLC2)

The Court has considered the moving and responding papers and the oral argument of counsel. For the reasons discussed below, the motion to transfer will be denied, the motions to dismiss will be granted in part and denied in part, with leave to amend, and Plaintiffs' objection to Plaza's joinders will be overruled.

## I. BACKGROUND

On August 30, 2007, Plaintiff Eneida Amparan ("Amparan") filed the instant action, alleging that her mortgage originator, Plaza, failed to disclose material information about her residential mortgage in the clear and conspicuous manner required by law. Amparan asserted that Plaza violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. and state laws. Amparan subsequently filed three successive amended complaints, the first as of right, the second pursuant to stipulation, and the operative corrected third amended complaint ("TAC") with leave of the Court.[2] The TAC names additional plaintiffs Rafael and Guadalupe Cisneros ("the Cisneroses") and additional defendants Countrywide and WAMU, and asserts claims for: (1) violations of TILA, (2) fraudulent omissions, and (3) violations of California Business & Professions Code § 17200. These claims are brought on behalf of putative nationwide and statewide classes.

Plaintiffs allege that Plaza entered into fraudulent schemes with both Countrywide and WAMU under which Plaza marketed Option Adjustable Rate Mortgage ("Option ARM") loans using deceptive loan documents. TAC ¶¶ 55-56. These loan documents allegedly omitted the following material information:

> (i) the actual interest rate on the Notes (12 C.F.R. § 226.17); (ii) that the initial interest rate disclosed in the Notes would last only one month, was discounted, and was substantially lower than the actual interest that Plaintiffs and Class Members would be actually charged on the Notes; (iii) that the amount of monthly payments provided for in the Notes and for the first three to five years in the Truth in Lending Disclosure Statement ("TILDS") was based entirely on the "teaser" rate; and (iv) that the amount of the monthly payments after one month would not be sufficient to even pay the interest being charged, let alone amortize the loan, so that each month the principal balance would increase even if the payments were made as scheduled (12 C.F.R. § 226.19).

---

[2] Plaintiffs filed a third amended complaint and then the operative corrected third amended complaint on the same date, August 31, 2009.

TAC ¶ 1. The loan documents allegedly contained the following characteristics:

> (i) the Monthly Payment Amount stated in the Note is based upon a low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the TILDS, for the first 3-5 years of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the first 3-5 years, the amount of the monthly payments increases.

TAC ¶ 23.

The practical effect of these loan terms was that negative amortization was certain to occur. TAC ¶ 24. Each month, the mortgagee would owe more money than she did at the start of the loan, and have less time to pay it back. TAC ¶ 25. The deferred interest was added to the principal balance and in turn began accruing interest. *Id*. Even if a mortgagee understood what was happening and tried to prepay the loan, mortgagees "were 'locked' into the loan by a draconian prepayment penalty consisting of a prepayment charge equal to the interest rate that would accrue during a six-month period of the amount prepaid (if the prepayment amount was greater than 20% of the original principal amount stated in the Note), which was calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment for a prepayment occurring during the first two to three years of the loan." TAC ¶ 29. "This draconian provision was designed by Defendants to deter and prevent anyone from refinancing the loan during the applicable time period." *Id*.

Moreover, Plaintiffs allege that:

> Each subject Option ARM loan has so-called payment caps, which provide that, even after the monthly payment increases, it will not increase by more than 7.5% per year. These payment caps are, however, subject to an overall cap on principal of 115% of the original loan amount. Once the loan principal reaches this 115% cap, the 7.5% limitation on payment increases no longer applies, and the payment generally will increase by more than that amount. This built-in "payment shock" is more than many Class Members can afford and was substantially certain to put them at risk of losing their homes to foreclosure.

TAC ¶ 31.

The agreement of Countrywide and WAMU to purchase Option ARM loans sold by Plaza under these terms was "critical" to Plaza's ability to market and sell the loans, since Plaza

3

otherwise lacked the financial resources to continue the Option ARM loans. TAC ¶¶ 8(c), 10(c). Countrywide and WAMU allegedly participated in the design of the loan documents and were fully aware of the alleged material omissions in the loan documents. TAC ¶¶ 8(d), 10(d), 55-56. Plaintiffs allege that Countrywide in fact purchased the Cisneroses' loan from Plaza, and WAMU purchased Amparan's loan. TAC ¶¶ 6-7, 10.

## II. MOTION TO TRANSFER

Plaza moves to transfer this action to the Central District of California ("Central District") pursuant to 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion for transfer pursuant to § 1404(a) lies within the discretion of the court. *Jones v. GC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The decision whether to grant such a motion turns on the facts of the particular case. *Id*. Factors to be weighed by the district court include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Id*. at 498-99.

The TAC might have been filed in the Central District, as the Cisneroses reside and the property securing their mortgage lies within that district. However, most of the relevant factors are neutral or weigh against transfer. With respect to the two mortgages entered into by the named plaintiffs, one was executed in the Northern District of California ("Northern District") and the other was executed in the Central District (factor 1). Both districts are in the state of California (factor 2). Plaintiffs chose the Northern District (factor 3). "[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice'

4

factors strongly favor venue elsewhere." *Florens Container v. Who Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) (citing *Sec. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). All of the defendants have extensive contacts with the Northern District (factor 4). As noted above, one of the mortgages giving rise to this action was executed in the Northern District and the other in the Central District (factor 5). Defendants have failed to demonstrate that there would be any appreciable difference in the cost of litigating the action in one forum versus the other (factor 6). Because one of the named plaintiffs' mortgage transactions occurred in the Northern District and one occurred in the Central District, documents and witnesses are present in both districts (factors 7 and 8).[3] Moreover, the case has been pending in the Northern District for three years, and this Court is familiar with the relevant facts and legal issues. Considering all of the circumstances, the Court in the exercise of its discretion declines to transfer the action.

## III. MOTIONS TO DISMISS

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted; dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched as factual allegations are not sufficient to state a claim. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim to relief

---

[3] Factors 9 and 10 do not apply.

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

**B.  Countrywide And WAMU**

    **1.  TILA (Claim 1)**

Plaintiffs claim that Plaza violated TILA by failing to disclose material information about their mortgages in a clear and conspicuous manner. Plaintiffs also claim that the subsequent purchasers of their loans, Countrywide and WAMU, are subject to assignee liability for Plaza's TILA violations. As noted above, Countrywide allegedly purchased the Cisneroses' loan, and WAMU allegedly purchased Amparan's loan. TAC ¶¶ 6-7, 10.

Any civil action that may be brought against a creditor under TILA also may be brought against the assignee of such creditor, but "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). "Although the Ninth Circuit does not appear to have addressed this question, TILA's assignee liability provision has been interpreted by other courts as meaning that a TILA claim may be asserted against an assignee only for 'violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents.'" *White v. Homefield Financial, Inc.*, 545 F. Supp. 2d 1159, 1168 (W.D. Wash. 2008) (*quoting Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)). Plaintiffs' TILA claims are based upon the allegation that material information – such as the fact of negative amortization – was *not* apparent on the face of the loan documents. Plaintiffs thus have failed to allege facts sufficient to state a claim for assignee liability against Countrywide and WAMU. The motions to dismiss as to these Defendants will

be granted, with leave to amend.[4]

### 2. Fraudulent Omissions (Claim 2)

Under California law, the elements of a common-law claim for fraudulent omissions are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007). Allegations of fraud must be pled with particularity. Fed. R. Civ. P. 9(b).

Defendants argue that Plaintiffs' fraudulent omissions claim must be dismissed because Defendants did not have a duty of disclosure, the disclosures made in the loan documents complied with TILA, and Plaintiffs have failed to plead justifiable reliance. Defendants also argue that they cannot be held liable for any omissions of Plaza, and that Plaintiffs have failed to allege a plausible claim that Defendants aided and abetted Plaza's alleged misconduct.

**Concealment/Suppression Of A Material Fact – Element (1)**

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be "stated with particularity." A plaintiff must include a description of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). However, in the context of a fraudulent omissions claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). In that instance, a plaintiff may plead fraud by alternative means. *Id.*

The purpose of Rule 9(b) is to require a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."

---

[4] In light of the Court's conclusion that Plaintiffs have failed to allege assignee liability against Countrywide and WAMU, the Court need not reach the numerous other arguments these Defendants make with respect to the viability of Plaintiffs' TILA claim.

*Swartz*, 476 F.3d at 764 (internal quotation marks and citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (internal quotation marks and citation omitted).

Plaintiffs allege that even though Defendants knew that negative amortization was a *certainty*, Defendants suppressed that fact by representing that negative amortization was only a mere *possibility*. For example, Plaintiffs allege that:

> the most that Defendants' Loan Documents said about negative amortization was that it "may" occur. This was ambiguous, misleading and deceptive, because it implies that negative amortization was subject to some future contingency, such as an increase in the index on which the adjustable rate was purportedly based, when, in fact, it was guaranteed to occur after only one month, even if the index stayed the same or went down.

TAC ¶ 32. The Court concludes that these and similar allegations in the TAC are sufficient to allege suppression of a material fact.

**Duty To Disclose – Element (2)**

TILA requires that a "creditor" – defined as the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness" – disclose certain information. 15 U.S.C. §§ 1602(f), 1631(a). For example, a creditor must disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). In addition, with respect to variable-rate loans with payment caps, "[i]f a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (*such as [the fact that] negative amortization will occur and the principal loan balance will increase* )." 12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

Because Plaza clearly qualifies as a creditor under TILA, it was subject to these statutory disclosure obligations. The thrust of Plaintiffs' fraudulent omissions claim is that Defendants concealed or suppressed the material fact that negative amortization was *certain* to occur by stating that negative amortization *may* occur, as stating that something *may* occur implies that it

may *not* occur.

Countrywide and WAMU, as the subsequent purchasers of Plaintiffs' loans, do not qualify as creditors under TILA. However, Countrywide and WAMU may be liable as aiders and abettors. "California has adopted the common law rule that liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (internal quotation marks and citation omitted). Aiding and abetting requires "actual knowledge of the primary violation". *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003). It also requires "substantial assistance" with the violation. *In re First Alliance Mortg. Co.*, 471 F.3d at 993. Plaintiffs allege that Countrywide and WAMU participated in a scheme with Plaza to market the misleading loans, and that they "dictated the terms of, selected, pre-approved, and/or drafted . . . the documents at issue in this action." TAC ¶¶ 55(e), 56(j). Plaintiffs also allege that Countrywide and WAMU provided Plaza with substantial assistance in marketing the fraudulent loans by providing lines of credit and guarantees that they would purchase the Option ARM loans when made. TAC ¶¶ 55-56. These allegations are sufficient to state a claim against Countrywide and WAMU under an aiding and abetting theory.

**Intent – Element (3)**

Plaintiffs allege that Defendants concealed or suppressed the certainty of negative amortization deliberately, with intent to defraud Plaintiffs and other consumers of the Optional ARM loans. TAC ¶¶ 24-26, 58.

**Reliance And Damage – Elements (4) and (5)**

To plead and prove reliance, a plaintiff must demonstrate that "had the omitted information been disclosed, [he] would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993). "It is not necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor in influencing his decision." *Engalla v. Permanente*

9

1  *Med. Group.* 15 Cal.4th 951, 976-77 (1997) (internal quotation marks and citation omitted).
2  Plaintiffs allege that had the material information regarding the negative amortization been
3  disclosed, they and the other class members would not have purchased the subject loans.  TAC ¶
4  107.  Plaintiffs also allege that as a result of Defendants' concealment they and the other class
5  members have lost equity in their homes.  TAC 108.

6        Defendants argue that the true interest rate and all other information required to be
7  disclosed under TILA in fact was disclosed.  Defendants assert that under these circumstances,
8  Plaintiffs' fraudulent concealment claim is precluded by *Hauk v. JP Morgan Chase*, 552 F.3d
9  114, 1121 (9th Cir. 2009).  *Hauk* holds that a disclosure cannot be rendered misleading by the
10 existence of other information that was neither disclosed nor required by TILA to be disclosed.
11 Defendants are correct in asserting that, viewed in isolation, many of the disclosures made in the
12 loan documents were accurate.  However, the core of Plaintiffs' argument is that Defendants
13 concealed or suppressed the fact that the minimum payment *necessarily* was insufficient to pay
14 the monthly interest on the loan, making negative amortization a certainty, by stating that
15 negative amortization was only a possibility.  This Court and others have held that when such
16 facts are alleged, *Hauk* does not bar state law fraud claims.  *See Brooks*, 2010 WL 2680265, at
17 *7-8 (collecting cases).

18       Accordingly, Defendants' motions will be denied with respect to Plaintiffs' fraudulent
19 omissions claim.

20       **3.**    **UCL (Claim 3)**

21       The UCL prohibits any "unlawful, unfair or fraudulent business practices."  *Cel-Tech*
22 *Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the
23 statute is written in the disjunctive, it applies separately to business practices that are (1)
24 unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490,
25 1496 (2003).  Plaintiffs claims that Defendants' conduct violated all three prongs.  Countrywide
26 and WAMU argue that, to the extent that the UCL claim is based on fraudulent conduct, it fails
27 for the same reasons as Plaintiffs' fraudulent omissions claim.  However, Plaintiffs have stated a
28 claim for fraudulent omissions, as discussed above.

Countrywide and WAMU argue that they cannot be liable under the UCL because they did not participate personally in the conduct at issue and because the claim is pled with insufficient particularity. "[A]n unfair practices claim under [the UCL] cannot be predicated on vicarious liability. . . . A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [the UCL]." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007). As discussed above, Plaintiffs have alleged that Countrywide and WAMU aided and abetted Plaza's fraudulent conduct. This Court previously has held that UCL claims based upon similar facts are sufficient at the pleading stage. *See Brooks*, 2010 WL 2680265, at 12-13. Accordingly, Defendants' motions will be denied with respect to the UCL claim.

Defendants argue that even if Plaintiff had alleged facts sufficient to state fraud or UCL claims under state law, any such claims are preempted by TILA. This Court has held repeatedly that TILA does not preempt state law claims that do not conflict with TILA's substantive requirements. *See, e.g.*, *Brooks v. ComUnity Lending*, No. C 07-4501 JF (PVT), 2010 WL 2680265, at *3-5 (N.D. Cal. July 6, 2010). Moreover, state law claims based upon TILA permissibly may supplement TILA by providing a more generous limitations period and additional remedies. *Id*. Plaintiffs' UCL claims are grounded in part in TILA and do not impose any requirements that conflict with TILA. Accordingly, they are not preempted. *See id.*

**C.    Plaza**

On October 5, 2009, the Court approved a stipulation extending to October 26, 2009 Defendants' time to respond to the TAC. WAMU filed its motion to dismiss on that date. After being informed of a personal issue affecting one of Countrywide's attorneys, Plaintiffs granted Countrywide an additional two weeks, until November 9, to file its response. When it learned of that agreement, Plaza requested a similar two-week extension. Plaintiffs denied that request; thus Plaza's response remained due on October 26. Although Plaza filed a motion to transfer on that date, it did not file either an answer or a motion to dismiss. Countrywide timely filed its motion to dismiss on November 9, 2009. Plaza filed joinders in the motions of WAMU and Countrywide on November 9 and 11, respectively. Plaintiffs object to Plaza's joinders as

11

1  untimely and request that the joinders be stricken and that Plaza's default be taken.

2   While it does not condone Plaza's willful disregard of its October 5 order, the Court declines to find that Plaza is in default. Accordingly, the Court will overrule Plaintiffs' objections and will extend its analysis of the Countrywide and WAMU motions to Plaza. However, the only aspect of the motions upon which Countrywide and WAMU have prevailed – Plaintiffs' failure to allege facts sufficient to show assignee liability – has no effect on Plaza, since Plaza is sued not as an assignee but as a principal.

### IV. ORDER

(1) The motion to transfer is DENIED;

(2) The motions to dismiss are GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND;

(3) Plaintiffs' objections to Plaza's joinder in the motions to dismiss are OVERRULED; and

(4) Plaintiffs shall file any amended pleading within thirty (30) days after the filing of this order.

DATED: 9/23/2010

_____
JEREMY FOGEL
United States District Judge

Case No. 5:07-cv-04498-JF/PVT
ORDER DENYING MOTION TO TRANSFER ETC.
(JFLC2)